**GREEN EVANS-SCHROEDER, PLLC**
Matthew H. Green (AZ Bar No. 020827)
Jesse Evans-Schroeder (AZ Bar No. 027434)
130 West Cushing Street
Tel.: (520) 639-7288
Fax: (520) 882-8843
Email: matt@arizonaimmigration.net

*Attorneys for Plaintiff*
Student Doe #1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TUCSON DIVISION

| | |
|---|---|
| Arizona Student DOE #1,<br><br>    Plaintiff,<br><br>    v.<br><br>Donald J. TRUMP, in his official capacity, President of the United States of America;<br><br>John CANTU, in his official capacity as ICE Enforcement and Removal Operations Phoenix Field Office Director;<br><br>Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; and<br><br>Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security;<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Request for Declaratory and Injunctive Relief |

Complaint for Declaratory
and Injunctive Relief

# INTRODUCTION

1. Plaintiff is a student in lawful F-1 status who is pursuing a master's degree. They are one of hundreds, if not more, F-1 students nationwide whose SEVIS record has been abruptly and unlawfully terminated by the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE) in the past two weeks, in an attempt to strip them of their ability to lawfully remain in the United States. On information and belief, this policy appears to be primarily targeting African, Arab, Middle Eastern, Muslim, and Asian students.

2. The Student and Exchange Visitor Information Systems (SEVIS) is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program (SEVP), uses SEVIS to monitor student status. On April 2, 2025, SEVP terminated Plaintiff's SEVIS record and marked Plaintiff "Otherwise failing to maintain status – Individual identified in criminal records check and/or has had their visa revoked."

3. Many of the hundreds of students who have had their SEVIS record terminated have been notified by the U.S. Department of State (DOS) that their visa has been revoked.[1] To date, DOS still has not advised Plaintiff that their visa has been revoked, although Plaintiff took steps to independently verify this fact after receiving notice from school officials that their SEVIS record was terminated. In practical terms, however, whether or not Plaintiff's visa has been revoked makes little difference here.

4. ICE takes the position that the termination of a SEVIS record effectively ends F-1 student status. Even when a visa is revoked, however, ICE is not authorized to terminate Plaintiff's student status. The grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiff's SEVIS record. An F-1 visa only controls a student's ability to enter into the country, not their continued lawful presence once admitted. Plaintiff has been in full compliance with the terms of their F-1 status and has not engaged in any conduct

---

[1] *See* Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students,* Associated Press, April 4, 2025, https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a.

Complaint for Declaratory and
Injunctive Relief                                        1

that would warrant termination of their status.

5. Rather, ICE's policy of unlawfully terminating SEVIS records—whether in conjunction with F-1 visa revocations or not—appears to be designed to coerce students, including Plaintiff, into abandoning their studies or post-graduate employment and "self-deporting" despite not violating their status. For example, on March 5, 2025, DOS informed a graduate student at Columbia University, Ranjani Srinivasan, that her F-1 student visa had been cancelled, with her SEVIS subsequently terminated.[2] On March 14, 2025, Secretary of Homeland Security Kristi Noem issued a post on X, accompanied by a video of Ranjani Srinivasan: "I'm glad to see one of the Columbia University terrorist sympathizers use the CBP Home app to self deport."[3]

6. Other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained, sometimes before even learning their visa had been revoked at all. On information and belief, there is a policy and practice of transferring these individuals to the South—in particular, Louisiana—once detained. There have been several high-profile cases of immigration arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainee across state lines to detention facilities in Louisiana and Texas.[4] On information and belief, there are several additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved to the South the day before or day of their bond hearing in immigration court.

---

[2] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristinoem-video.html.
[3] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), *available at* https://x.com/Sec_Noem/status/1900562928849326488.
[4] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); "What we know about the Tufts University PhD student detained by federal agents," CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html (Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).

Complaint for Declaratory and
Injunctive Relief                2

7. If ICE believes a student is deportable for having a revoked visa or any other reason, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process. It similarly cannot engage in retaliatory arrests and transfers to further intimidate students into abandoning their studies and fleeing the country to avoid arrest.

8. Over the past two weeks, visa revocations and SEVIS terminations have shaken campuses across the country, including Arizona.[5] The racially targeted SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students who are justifiably frightened about being arrested and shipped to an immigration jail far away from their communities.

9. Plaintiff does not challenge the revocation of their visa in this action. Rather, Plaintiff brings this action under the Administrative Procedure Act (APA) and the Declaratory Judgment Act to challenge ICE's illegal termination of their SEVIS record.

## JURISDICTION

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b). An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant declaratory and injunctive relief. *Id.* §§ 2201, 2202. The Court also has authority under the APA, 5 U.S.C. §§ 701–06.

11. Plaintiff does not challenge an underlying order of removal or actions committed to unreviewable agency discretion. Plaintiff is challenging Defendants' unlawful termination of their SEVIS and seeks to prevent their unlawful arrest as a result of that termination. Plaintiff is

---

[5] *See* Helen Rummel, *At least 50 ASU students have visas revoked by Trump administration, campus group says,* Arizona Republic, April 8, 2025, available at https://www.azcentral.com/story/news/local/arizona-education/2025/04/08/asu-students-international-visas-revoked-trump-admin/82983102007/; *see also* Prerana Sannappanavar, *'Handful' of U of A students had visas revoked, faculty chair has heard*, Arizona Daily Star, April 13, 2025, available at https://tucson.com/news/local/subscriber/article_cab92bd5-05bb-48be-9c34-08abca495f51.html.

not able to obtain review of their SEVIS revocation before an Immigration Judge. No other forum exists to address these claims.

12. Applying any statutory provision to curb jurisdiction in this case therefore would deprive Plaintiff of any effective judicial review of their claims and a "serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe,* 486 U.S. 592, 603 (1988).

## VENUE

13. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(e) because the Defendants are employees or officers of the United States, acting in their official capacity; because a substantial part of the events or omissions giving rise to the claim occurred in the District of Arizona, Tucson Division; because Plaintiff falls within the jurisdiction of the ICE Phoenix Field Office[6], which is in the jurisdiction of the District of Arizona; and because Plaintiff resides in the District of Arizona, and there is no real property involved in this action.

## PARTIES

14. Plaintiff is an international student currently pursuing a master's degree and resides in Pima County, Arizona. Plaintiff seeks to proceed in this action with a pseudonym due to fear of retaliation by Defendants for asserting their rights through this lawsuit, and of harassment or blacklisting by third parties.[7]

15. Defendant Donald J. TRUMP is named in his official capacity as the President of the United States of America. In this capacity, he is responsible for the policies and actions of the executive branch, including the U.S. Department of State and U.S. Department of Homeland Security.

16. Defendant John Cantu is the Field Office Director of ICE, in Phoenix, Arizona, and is named in his official capacity. ICE is the component of the DHS that is responsible for detaining and removing noncitizens according to immigration law and oversees custody determinations. In his official capacity, he is responsible for the enforcement of the immigration laws in Arizona,

---

[6] The ICE Phoenix Field Office's "area of responsibility" encompasses all of Arizona. *See* https://www.ice.gov/field-office/phoenix-field-office.
[7] Plaintiff will separately file a motion to proceed pseudonymously.

Complaint for Declaratory and
Injunctive Relief                                      4

including against Plaintiff. ICE is responsible for the termination of Plaintiff's SEVIS record.

17. Defendant Todd M. LYONS is the Acting Director of ICE and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens.

18. Defendant Kristi NOEM is the Secretary of the DHS and is named in her official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. In her capacity as Secretary, Defendant Noem has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a).

## LEGAL BACKGROUND

19. A nonimmigrant visa controls a noncitizen's admission into the United States, not their continued stay. Congress established a statutory basis for student visas under 8 U.S.C. § 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status. Once admitted in F-1 status, a student is granted permission to remain in the United States for the duration of status (annotated as D/S) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

20. The SEVIS is a centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visitors and track their compliance with terms of their status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials (DSOs) must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations.[8] Termination can only be based on a student's failure to maintain status.[9]

---

[8] *See SEVIS Termination Reasons*, DHS Study in the States, (last visited Apr. 6, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons.

[9] *See id.*

Complaint for Declaratory and
Injunctive Relief                                   5

21. DHS regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

22. The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements—for example, by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

23. With the respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Minor misdemeanor offenses do not meet this threshold for termination based on criminal history. The Supreme Court of the United States has held that a crime of violence "means 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *See, e.g.*, *Borden v. United States*, 593 U.S. 420, 427 (2021).

24. The second category, termination of status by ICE, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits ICE to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. ICE cannot otherwise unilaterally terminate nonimmigrant status.[10]

25. Accordingly, the revocation of a visa does not constitute failure to maintain status and

---

[10] *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

Complaint for Declaratory and
Injunctive Relief                           6

cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter the country and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation *after* a student has been admitted into the United States, because the student is permitted to continue the authorized course of study.[11]

26. ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[12] Rather, if the visa is revoked, the student is permitted to pursue their course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[13]

27. While a visa revocation *can* be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings.[14] The immigration judge may dismiss removal proceedings even where a visa is revoked, so long as a student is able to remain in valid status.[15] Only when a final removal order is entered would status be lost. *See* 8 U.S.C. § 1252(a)(1) (General Orders of Removal); 8 C.F.R. § 1241.1 (Final Order of Removal).

28. A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter. *See* 8 C.F.R. § 214.1(d) (establishing the three limited circumstances under which DHS can terminate status).

29. The immigration courts have no ability to review the SEVIS termination here because

---

[11] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf
[12] *Id*.
[13] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.
[14] *See* 8 USC § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).
[15] 8 C.F.R. § 1003.18(d)(ii)(B).

Complaint for Declaratory and
Injunctive Relief                7

the process is collateral to removal.[16] The termination of a SEVIS record constitutes final agency action for purposes of APA review.[17]

### FACTUAL ALLEGATIONS

30. Plaintiff is currently pursuing a master's degree, which is authorized through their F-1 student status, in Pima County, Arizona. They are from a country in South Asia and are scheduled to earn their master's degree and graduate from an Arizona college or university next month.

31. Plaintiff has not engaged in any significant political activity.

32. Plaintiff first came to study in the United States on a student visa in 2021 when they arrived in Arizona to begin pursuing their master's degree at a college or university located in the District of Arizona. Since that time, Plaintiff has complied with all the requirements of their visa and of the educational institution in which she is enrolled.

33. On or about April 3, 2025, Plaintiff received notice from the college or university where they are enrolled that their SEVIS status was terminated.

34. According to the school's officials, the reason listed was that Plaintiff had been identified in a criminal records check. Specifically, Plaintiff was advised that the reason listed for their SEVIS record termination was "Otherwise failing to maintain status – Individual identified in criminal records check and/or has had their visa revoked."

35. Plaintiff was informed by school officials that they discovered that Plaintiff's SEVIS account was terminated. Accordingly, and upon information and belief, the school itself did not terminate Plaintiff's SEVIS status.

36. Plaintiff is unaware of the factual basis for the termination of their SEVIS status.

37. Plaintiff was never informed that their student visa was revoked. However, after being advised that their SEVIS record was terminated, they logged on to their account with the Department of State Consular Electronic Application Center (CEAC), which informed that their F-1 visa was revoked on April 2, 2025—the day before they were advised that their SEVIS record had been terminated.

---

[16] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).
[17] *See Fang*, 935 F.3d at 185.

38. Plaintiff's only criminal history is a minor misdemeanor arrest. Although Plaintiff was charged with the misdemeanor in a court of limited jurisdiction in Pima County, Arizona, they were never convicted because the prosecutor dismissed charge. The dismissed misdemeanor charge does not render Plaintiff inadmissible to or deportable from the United States.

39. Through their F-1 student status, Plaintiff has been authorized for employment through their school, and they lawfully maintained on-campus employment since their first semester of study in 2022.

40. Since Defendants terminated Plaintiff's SEVIS record, their on-campus employment has been disrupted, and their ability to continue working and earning a living is in jeopardy. Plaintiff had a conversation with their supervisor, who advised Plaintiff of the university's desire to have them continue working on campus if they felt safe enough to do so. However, due to Plaintiff's fear of being arrested and detained by Defendants, they have chosen to discontinue their on-campus employment, and to no longer log any hours for work, as Plaintiff is uncertain as to whether Defendants might further retaliate against and punish them for continuing to work after their SEVIS record was terminated.

41. Plaintiff is also married to a U.S. citizen and they are raising a two-year-old U.S. citizen child together in Southern Arizona.

42. Since they received notice of their SEVIS termination, Plaintiff has been experiencing high levels of stress and anxiety. They are unsure of what will happen to them, and they fear the effect incarceration or deportation would have on their U.S. citizen spouse, and their U.S. citizen child.

43. As stated above, ICE's en masse SEVIS terminations have created havoc and uncertainty for schools as well. Upon information and belief, Plaintiff's college was not given any advanced warning or further explanation for the termination of Plaintiff's SEVIS status. Schools are scrambling to respond to these unprecedented actions and determine whether and how they can help their international students.[18]

---

[18] *See* Liam Knox, *How Trump is Wreaking Havoc on the Student Visa System*, Inside Higher Ed, April 5, 2024, https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.

44. Intervention by the Court is necessary to remedy Defendants' illegal conduct.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Administrative Procedure Act**

*(Unauthorized SEVIS Termination)*

45. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

46. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

47. Defendants have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status. This is true even if DOS has revoked Plaintiff's F-1 visa (which they have not received any notice of). Additionally, nothing in Plaintiff's criminal history or other history provides a basis for termination.

48. Therefore, Defendant's termination of Plaintiff's SEVIS status is not in accordance with law, in excess of statutory authority, and without observance of procedure required by law.

### SECOND CAUSE OF ACTION

**Fifth Amendment**

*(Procedural Due Process)*

49. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

50. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

51. Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. Because these regulations impose mandatory

constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiff has a constitutionally protected property interest in their SEVIS registration. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

52. Defendants terminated Plaintiff's SEVIS record based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

## THIRD CAUSE OF ACTION

### Administrative Procedure Act

*(Procedural Due Process)*

53. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

54. Under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

55. Defendants terminated Plaintiff's SEVIS record based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

56. Accordingly, Defendants' action is contrary to a constitutional right.

## FOURTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act and the *Accardi* Doctrine

*(Policy of Targeting African, Arab, Middle Eastern, Muslim, and Asian students)*

57. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein. The government has adopted a policy of targeting African, Arab, Middle Eastern, Muslim, and Asian students for removal based on their race and national

Complaint for Declaratory and
Injunctive Relief                    11

origin. This policy is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C.A. § 706 (2)(A), (B), (C), and violates the *Accardi* doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

### FIFTH CAUSE OF ACTION

**Administrative Procedure Act**

*(Arbitrary and Capricious SEVIS Termination)*

58. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

59. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including if it fails to make a rational connection between the facts found and the decision made. 5 U.S.C. § 706(2)(A).

60. Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status in violation of the APA, let alone any rational connection between the facts found and the decision made.

61. Defendants' action is therefore arbitrary and capricious.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that the termination of Plaintiff's SEVIS record was unlawful;

(3) Vacate and set aside ICE's termination of Plaintiff's SEVIS status;

(4) Order that Defendants restore Plaintiff's SEVIS record and status;

(5) Enjoin Defendants from taking any enforcement action against Plaintiff arising directly or indirectly from their misdemeanor conviction, the unlawful termination of their SEVIS, or the potential unlawful revocation of their F-1 visa which may have already occurred;

(6) Enjoin Defendants from detaining Plaintiff pending these proceedings;

(7) Enjoin Defendants from transferring Plaintiff away from the jurisdiction of this District pending these proceedings;

(8) Enjoin Defendants from removing Plaintiff from the United States pending these proceedings;

(9) Award reasonable costs and attorney fees under the Equal Access to Justice Act (EAJA) and/or any other statute or legal authority that authorizes such an award under the particular circumstances of this case; and

(10) Grant such further relief as the Court deems just and proper.

Dated: April 13, 2025                                              Respectfully submitted,

                                                                   s/ Matthew Green
                                                                   Matthew Green
                                                                   Jesse Evans-Schroeder
                                                                   Attorneys for Plaintiff