TIMOTHY COURCHAINE
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant U.S. Attorney
State Bar No. 12700
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Fax: (520) 620-7149
Email: denise.faulk@usdoj.gov
*Attorneys for the United States*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Unknown Party, | CV-25-00174-TUC-JGZ |
| Plaintiff, | **RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| Donald J. Trump, et al, | |
| Defendants. | |

The United States of America, specially appearing through undersigned counsel on behalf of Donald J. Trump, in his official capacity as President of the United States of America; John Cantu, in his official capacity as Director of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations Phoenix Field Office; Todd M. Lyons, in his official capacity as Acting Director, United States Immigration and Customs Enforcement; and Kristi Noem, in her official capacity as Secretary of U.S. Department of Homeland Security, hereby responds to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2). This response is supported by the following memorandum of points and authorities, attached Exhibit and all matters of record.

**Memorandum of Points and Authorities**

Plaintiff, allegedly a foreign national, brings an Administrative Procedure Act (APA), 5 U.S.C. § 706(2), case, challenging Immigration and Customs Enforcement's

(ICE's) termination of a Student and Exchange Visitor Information System (SEVIS) record. (Doc. 1.) Plaintiff, however, conflates the termination of her SEVIS record with a termination of her status as a nonimmigrant student (F-1 student status) and demands that this Court grant her extraordinary relief. While Plaintiff asserts that she "does not challenge the revocation of their visa in this action," she requests that the Court "[e]njoin Defendants from taking any enforcement action against Plaintiff arising directly or indirectly from . . . the potential unlawful revocation of their F-1 visa which may have already occurred." (Doc. 1 at 4, 13.)

To the extent that Plaintiff may be attempting to challenge the State Department's alleged revocation of her F-1 visa, State Department's revocation decisions are judicially unreviewable. 8 U.S.C. § 1201(i). "There shall be no means of judicial review . . . of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title." *Id.* Furthermore, the Immigration and Nationality Act (INA) strips this Court of jurisdiction to review actions made discretionary by legislation. *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024) (citing 8 § 1252(a)(2)(B)(ii)).

This Court should decline Plaintiff's requested relief.

First, Plaintiff fails to demonstrate a likelihood of success on the merits: (a) the United States has not waived sovereign immunity, (b) termination of a SEVIS record is not a final agency action, and (c) Plaintiff does not have a protected interest in a SEVIS record so as to give rise to due process protections. Second, Plaintiff fails to establish irreparable harm because her alleged harms are either purely speculative or speculative and monetary. By definition, monetary harms are reparable at law. Third, the balance of harms and the public interest weigh in favor of the Executive's ability to control immigration.

Accordingly, for the reasons discussed below, this Court should deny Plaintiff's demand for extraordinary relief, especially because Plaintiff's demand is that she be granted the requested ultimate relief. *See Aminjavaheri v. Biden*, Civ. A. No. 21-2246

(RCL), 2021 WL 4399690, at *5 (D.D.C. Sept. 27, 2021) ("Moreover, the D.C. Circuit has cautioned that a preliminary injunction 'should not work to give a party essentially the full relief he seeks on the merits.'" (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (citations omitted)).

## I.   Background

### A.   Plaintiff

Plaintiff alleges that she is a foreign national.[1]  (Doc. 1 at 4, 9.)  She alleges that she has been in the United States on a student visa since 2021.  (*Id*. at 9.)  She alleges that on April 3, 2025, her school informed her that her SEVIS record had been terminated.  (*Id.*)  She alleges that she reviewed her account with the State Department's Consular Electronic Application Center, and it showed that the State Department[2] revoked her F-1 visa on April 2, 2025.  (*Id.*)  Plaintiff alleges that she was charged with a misdemeanor in a court of limited jurisdiction in Pima County.  (*Id.* at 10.)  And she alleges that her employer desired her to continue working on campus but that she has "chosen to discontinue their on-campus employment, and to no longer log any hours for work."  (*Id.*)

### B.   Plaintiff's Complaint

On April 14, 2025, Plaintiff filed her complaint.  *Id.*  Plaintiff brings an APA claim for alleged unauthorized SEVIS termination under Count One, a Fifth Amendment procedural due process claim for terminating her SEVIS record under Count Two, an APA procedural due process claim for terminating her SEVIS record under Count Three, An APA/Violation of *Accardi* Doctrine claim for allegedly targeting African, Arab, Middle Eastern, Muslin, and Asian students in Count Four and an APA claim for alleged arbitrary and capricious termination of her SEVIS record in Count Five.  (*Id.* at 11-13.)

Plaintiff seeks declaratory and injunctive relief declaring that the termination of her SEVIS record was unlawful, vacating ICE's termination of her "SEVIS status," ordering Defendants to restore her "SEVIS record and status," enjoining Defendants from

---

[1] The United States cannot verify *any* of Plaintiff's allegations because Plaintiff has refused to provide her identifying information to date.
[2] The State Department is not a Defendant herein.  (*See* Doc. 1, generally.)

taking any enforcement action arising out of her "misdemeanor conviction, the unlawful termination of their SEVIS, or the potential unlawful revocation of their F-1 visa which may have already occurred." (*Id.* at 13.) Plaintiff also seek injunctions preventing Defendants from detaining, transferring or removing her pending the proceedings. (*Id.* at 13-14.)

### C.     Plaintiff's Motion

Plaintiff filed the Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2.) Despite asserting in the Complaint that she "does not challenge the revocation of their visa in this action (Doc. 1 at 4)," Plaintiff seeks a "temporary restraining order and preliminary injunction to prevent Defendants from taking any enforcement action against Plaintiff arising directly or indirectly from the unlawful termination of their SEVIS record or the potential unlawful revocation of their F-1 visas (Doc. 2 at 8)." Plaintiff asserts that "ICE appears to be taking the position that the termination of an individual's SEVIS record effectively ends their F-1 visa status, which is not the case. Even when a visa is revoked, ICE is not authorized to terminate Plaintiff's F-1 student status."[3] (*Id.* at 9.)

Plaintiff correctly notes that ICE has the authority to initiate removal proceedings and make its case in immigration court. (*Id.* at 10.) The Complaint does not allege that Plaintiff has been issued a Notice to Appear or that ICE has initiated removal proceedings against her.[4] (*See* Doc. 1, generally.)

Plaintiff again admits that she has chosen to discontinue her on-campus employment. (Doc. 2 at 12.) She asserts that she fears "the effect of incarceration or

---

[3] Plaintiff does not include a citation for her stated belief as to ICE's position. (Doc. 2.) It is incorrect. "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide [Student and Exchange Visitor Program] SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated an alien's nonimmigrant status simply by terminating a SEVIS record." (Ex. A, Watson Decl., ¶ 8.)

[4] As previously noted, Defendants cannot ascertain anything about Plaintiff or her status because she has not identified herself.

4

deportation." (*Id.* at 13.) The Complaint does not allege that Plaintiff personally[5] has been threatened with incarceration or deportation. (*See* Doc. 1, generally.)

Plaintiff asserts that "Given the actions related to similarly situated international students, Plaintiff is at serious and immediate risk of further unlawful enforcement action by ICE – including arrest, detention, being transferred against their will out of the jurisdiction of this District, and deportation from the United States." (Doc. 2 at 14, 21.) However, the Court has no evidence that ICE has taken *any* unlawful enforcement action against Plaintiff, that she is similarly situated to any students who have appeared in news reports, that those students had SEVIS records terminated, that the termination of anyone's SEVIS records led to any action, or the legal basis for any actions that may have been taken against the unrelated students.

Plaintiff asserts that she is likely to succeed on the merits by conflating the termination of her SEVIS record, which she alleges happened, with the bald statement that "SEVIS termination can only be based on a student's failure to maintain status." (Doc. 2 at 16.) Plaintiff's citation for the latter assertion is not to a statute[6] or regulation but to a "job aid [that] is a quick reference for termination reasons noted in the Student and Exchange Visitor Information System (SEVIS)."[7] Plaintiff recognizes that ICE can terminate status (not the SEVIS record) under 8 C.F.R. § 214.1(d). (Doc. 2 at 17.) However, the Complaint does not allege that ICE terminated her status under that regulation. (*See* Doc. 1, generally.)

---

[5] The Complaint and Motion reference actions that reportedly have been taken against others. (Docs. 1, 2.) The facts underlying those purported actions are not before this Court, and it is not clear that *any* of those purported actions were taken merely because a SEVIS record was terminated, which is all that Plaintiff has alleged here. The cited articles, which are not evidence, do not mention SEVIS or terminating SEVIS records.

[6] Title 8 U.S.C. § 1372 "is the statutory authority underpinning SEVIS. Inherent in that authority is SEVP's ability to update and maintain the information in SEVIS and, as such, to terminate SEVIS records, as needed, to carry out the purposes of the program." (Ex. A, ¶4.)

[7] https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last visited April 16, 2025).

Plaintiff asserts that the balance of equities favors a TRO because there is no "imminent harm to the government or public interest in Plaintiff continuing their studies or work." (Doc. 2 at 24.) However, there is no allegation in the Complaint that terminating the SEVIS record has prevented Plaintiff from continuing her studies or work. (*See* Doc. 1, generally.) The only allegation is that she chose to discontinue working. (*Id.* at 10.)

### D.   Statutory Background

#### 1.   Nonimmigrant Students

The INA, as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To be admitted in F-1 status, an applicant must present a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; present documentary evidence of financial support; demonstrate he or she intends to attend the school specified on the student's visa; and, if the student attends a public secondary school, demonstrate that he or she has reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, an alien must "pursue a full course of study" or "engage in authorized practical training[.]" *Id.* § 214.2(f)(5)(i).

"Optional Practical Training (OPT)"[8] must be "directly related to [a student's] major area of study" in order to qualify as authorized training. Id. § 214.2(f)(10). OPT allows eligible students to obtain temporary employment that is directly related to an

---

[8] It is unclear from the Complaint whether Plaintiff is authorized for OPT. (*See* Doc. 1, generally.)

6

alien's major area of study. *Id.* § 214.2(f)(10)(ii). Aliens in an F-1 status, who received a science, technology, engineering, or mathematics (STEM) degree may extend participation in the OPT program for up to an additional two years. *Id.* § 214.2(f)(10)(ii)(C).

OPT can occur while an alien is in school, during breaks, or after a student has completed his or her course of study. *Id*. § 214.2(f)(10)(ii)(A)(1)-(3). While in school, an alien's status is based on that student pursuing a degree and need not be renewed routinely. *Id.* § 214.2(f)(7). For post-degree completion OPT, there are limits on how long an individual may be unemployed. In particular, aliens in an F-1 status may not accrue more than ninety days of unemployment unless granted a twenty-four-month STEM OPT extension, in which case they may not accrue more than a total of 150 days of unemployment. *Id.* § 214.2(f)(10)(ii)(E). Periods of unemployment longer than those authorized by regulation may be considered a failure to maintain status. *Id*.

While a nonimmigrant must maintain his course of study to maintain his F-1 status, he is not required to maintain the visa he obtained to enter the United States. Instead, F-1 visa-holders are admitted for their "duration of status" – meaning the student is authorized to stay in the United States while pursuing a full course of study at an educational institution approved for attendance by foreign students or engaging in authorized practical training following completion of studies. *See* 8 C.F.R. § 214.2(f)(5). This applies even if the student's visa expires while the student is in F-1 status. 8 C.F.R. §214.2(f)(5)(i).

An F-1 student who completes his course of study and any authorized training that follows may change to a different nonimmigrant status; otherwise legally extend their period of authorized stay in the United States; or leave the United States. *See* 8 C.F.R. § 214.2(f)(5)(iv). F-1 students who complete their course of study and any practical training that follows are allowed 60 days after the completion of such to prepare for departure from the United States. *See id.* But F-1 students who fail to maintain status are not afforded a period for departure. *Id.*

## 2. SEVIS

Congress required that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title."  8 U.S.C. § 1372(a)(1).  (*See also* Ex. A, ¶ 4.)

Accordingly, the Secretary of Homeland Security created SEVIS, "which is a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants."  ICE, Student and Exchange Visitor Information System (available at: https://www.ice.gov/sevis/overview) (last visited Apr. 16, 2025).

ICE maintains SEVIS records in DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records.  86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States.").

"Congress provided broad statutory authority under 8 U.S.C. § 1372 for the Government 'to develop and conduct a program to collect' information regarding nonimmigrant students and exchange visitors and to 'establish an electronic means to monitor and verify' certain related information.  This is the statutory authority underpinning SEVIS.  Inherent in that authority is  SEVP's ability to update and maintain the information in SEVIS and, as such, to terminate SEVIS records, as needed, to carry out the purposes of the program."  (Ex. A, ¶ 4.)

"Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated an alien's nonimmigrant status simply by terminating a SEVIS record." (*Id.*, ¶ 8.) Termination of a SEVIS record does not necessarily trigger any enforcement action by ICE, absent other factors. (*Id.*, ¶ 9.)

"The authority to issue or revoke visas for nonimmigrant students lies with the Department of State, not SEVP. Terminating a record within SEVIS does not effectuate a visa revocation. At the same time, a prudential visa revocation does not necessarily trigger any enforcement action by ICE, absent other factors." (*Id.*, ¶ 10.)

## II.   Legal Standard

"A [temporary restraining order] is an extraordinary remedy and should be granted sparingly." *Basel Action Network v. Mar. Admin.*, 285 F. Supp. 2d 58, 60 (D.D.C. 2003). A party seeking a temporary restraining order must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)); *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions"). The moving party bears the burden of persuasion and must demonstrate "by a clear showing" that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Where a party seeks to change the status quo through action rather than merely to preserve the status quo, typically the moving party must meet an even higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78

(D.D.C. 2006) (collecting authorities); *see League of Women Voters v. Newby*, Civ. A. No. 16-0236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

### III.   Plaintiff is not entitled to a Temporary Restraining Order

Plaintiff conflates the agency's action here – the termination of her SEVIS record – with the termination of her F-1 status.  (Doc. 1 at 2.) ("ICE takes the position that the termination of a SEVIS record effectively ends F-1 student status.").[9]  Plaintiff includes no allegations that ICE actually has terminated her status, which requires (1) "the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act;" (2) "the introduction of a private bill to confer permanent resident status on such alien;" or, (3) "notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."  8 C.F.R. § 214.1(d).  (*See* Doc. 1, generally.)  Moreover, Plaintiff includes no allegations that ICE has instituted any action to revoke her F-1 status or remove her from the United States, which could only occur after ICE instituted removal proceedings and Plaintiff has an opportunity to appear before an immigration judge.  8 U.S.C. § 1229a.  (*See* Doc. 1, generally.)

### A.   Plaintiff has not demonstrated a likelihood of success on the merits.

#### 1.   The United States has not waived sovereign immunity.

"Sovereign immunity is jurisdictional" and "[a]bsent a waiver, . . . shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).   "The burden rests with the plaintiff to demonstrate the government's waiver of immunity."  *Hafen v. Pendry*, 646 F. Supp. 2d 159, 160 (D.D.C. 2009) (citation omitted).

Even though the APA generally waives the government's immunity, APA section 702 "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is

---

[9] As noted above, ICE's position is to the contrary: "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States." (Ex. A, ¶ 8.)

sought.'"  *Cohen v. United States*, 650 F.3d 717, 724-25 (D.C. Cir. 2011) (quoting 5 U.S.C. § 702) (citing *Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (concluding the government's immunity remains intact when "another statute expressly or implicitly forecloses injunctive [or declaratory] relief"))*; see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("[Section 702] prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."). "'[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy' – including its exceptions – to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)); *see Block*, 461 U.S. at 287 ("A necessary corollary of this rule [that the United States cannot be sued without the consent of Congress] is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.").

The Privacy Act provides an alternative, adequate remedy to the APA. 5 U.S.C. § 552a(g)(1)(C) states,

> Whenever an agency . . . fails to maintain any record concerning any individual with such accuracy . . . as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C).

Plaintiff's claims sound in the Privacy Act:  As Plaintiff recognizes, "SEVIS is a centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visitors and track their compliance with terms of their status." (Doc. 1 at 5 (citing 8 U.S.C. § 1372).)  Plaintiff asks this Court to vacate the termination of the SEVIS record.  (*Id*. at 12.).  In other words, Plaintiff demands this

11

Court to vacate an entry in a Privacy Act system of records.

The Privacy Act, however, precludes review because Plaintiff is allegedly a foreign national. 5 U.S.C. § 552a(a)(2) provides, "the term 'individual' means a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). Plaintiff makes no claim, nor can she, that she is either a U.S. citizen or a lawful permanent resident. As such, the United States has not waived sovereign immunity because the Privacy Act precludes judicial review of Plaintiff's claims. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act.").

Further, to the extent Plaintiff may seek to amend her complaint to bring a Privacy Act challenge, it is well-settled that the Privacy Act is a comprehensive statutory scheme that precludes other avenues of relief. *See, e.g., Wilson v. Libby*, 535 F.3d 697, 708-09 (D.C. Cir. 2008) (noting that Congress created comprehensive scheme under the Act and the fact that the scheme does not provide relief for individual plaintiff does not warrant alteration or supplementation of the framework); *see also Chichakli v. Kerry*, 203 F. Supp. 3d 48, 57 (D.D.C. 2016) (dismissing claims because claims related to unauthorized disclosure of records must be brought pursuant to Privacy Act). Plaintiff's requested injunctive relief is not available as a remedy under the provisions she invokes, 5 U.S.C. § 552a(g)(1)(C). *See Dick*, 67 F. Supp. 3d at 187 ("Injunctive relief is not available as a remedy for claims under []§ 552a(g)(1)(C))."

In sum, the United States has not waived sovereign immunity.

**2.     Plaintiff does not allege any final agency action.**

Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been

determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).

Even assuming the termination of a SEVIS record is a "consummation of the agency's decisionmaking process," Plaintiff fails to identify any final agency action because there are no legal consequences to the termination of her SEVIS record. The Department has not terminated Plaintiff's status – "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States." (Ex. A, ¶ 8.) As such, Plaintiff fails to allege a challenge to a final agency action.

**3.    The Agency's action does not violate due process.**

Plaintiff asserts that "[t]he failure to provide notice of the facts that formed the basis for the SEVIS termination was therefore a violation of due process under the Fifth Amendment." (Doc. 2 at 21.) Plaintiff is incorrect.

"For a plaintiff to establish a procedural due process claim, it must show that (1) it has a protected interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections." *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, 132 F. Supp. 3d 98, 122 (D.D.C. 2015) (citing *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1122 (D.C. Cir. 1988)). Plaintiff has no property interest in a SEVIS record.[10] *See Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A. No. 18-0189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (holding that plaintiff did not have an property interest in her SEVIS status that would implicate due process); *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students); *Doe 1 v. U.S. Dep't*

---

[10] Plaintiff claims to have "a constitutionally protected property interest in their SEVIS registrations," citing *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015), and *Brown v. Holder*, 763 F.3d 1141 (9th Cir. 2014). (Doc. 2 at 20.) In *ASSE*, the Ninth Circuit declined to reach the issue whether ASSE had a protected property interest and remanded to the district court "to decide in the first instance whether ASSE has a protected property interest." *ASSE*, 803 F.3d at 1079. In *Brown*, the Ninth Circuit recognized a constitutionally protected interest in plaintiff's citizenship applications. *Brown*, 763 F.3d at 1147-48. Neither case involved a SEVIS record or an asserted constitutionally protected interest in a SEVIS record.

*of Homeland Sec.*, No. 220CV09654VAPAGRX, 2020 WL 6826200, at n.3 ("Although Plaintiffs do not allege in the Complaint or Motion a property interest in their SEVIS status, it is equally unlikely that one exists.").[11]

Because Plaintiff does not have a constitutionally protected property interest in her SEVIS record, she cannot establish a procedural due process claim. *See Cmty. Fin. Servs.*, 132 F. Supp. 3d at 122.

### B. Plaintiff has not established a likelihood of immediate irreparable harm.

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). And Plaintiff must demonstrate "a particularized, irreparable harm beyond mere removal." *Nken v. Holder*, 556 U.S. 418, 438 (2009) (Kennedy, J., concurring).

Plaintiff has failed to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief. Plaintiff's speculative claim related to her loss of future employment does not constitute irreparable harm. (Doc. 2 at 23.) "Monetary injuries

---

[11] "There is no constitutionally protected interest in either obtaining or continuing to possess a visa." *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases).

14

alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted). Additionally, her claim is speculative because a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id*. at 414. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015).

Otherwise, the Complaint and Motion attempt to claim irreparable harm based on actions that reportedly have been taken against other students. (Docs. 1, 2.) As noted above, the facts underlying those purported actions are not before this Court, and it is not clear that *any* of those purported actions were taken merely because a SEVIS record was terminated, which is all that Plaintiff has alleged here.[12] Plaintiff's speculative assertion of "serious and immediate risk of further unlawful enforcement action by ICE – including arrest, detention, being transferred against their will out of the jurisdiction of this District, and deportation from the United States (Doc. 2 at 14, 21)" fails. The Court has no evidence that ICE has taken *any* enforcement action against Plaintiff – lawful or otherwise – or that she is similarly situated to any students who have appeared in news reports, that those students had SEVIS records terminated, that the termination of anyone's SEVIS record led to any action, or the legal basis for any actions that may have been taken against the unrelated students. Moreover, any claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken*, 556 U.S. at 435 ("[T]he burden of removal alone cannot constitute the requisite irreparable injury."). And Plaintiff is free to depart the United States on her own. *See Bennett v. Isagenix Int'l LLC*,

---

[12] To the extent that Plaintiff may be attempting to challenge the State Department's revocation of her F-1 visa, as noted above, that is not reviewable before this Court. *See* 8 § 1252(a)(2)(B)(ii); *Bouarfa v. Mayorkas*, 604 U.S. 6.

118 F.4th 1120, 1129 (9th Cir. 2024).

As such, the Court should find that Plaintiff has not established irreparable harm.

### C. The balance of harms and the public interest weigh against relief.

The party seeking a preliminary injunction must show that the balance of equities tips in their favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. A court "'should pay particular regard for the public consequences'" of injunctive relief. *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Here, the public interest weighs in favor of denying the motion. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992); *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases have long recognized the power to . . . exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations," and such "matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

Thus, the balance of the equities weighs in favor of the Government.

## IV. The Court should require Plaintiff to post security.

Federal Rule of Civil Procedure 65(c) states, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). To the extent that the Court grants relief to Plaintiff, the United States respectfully requests that the Court require Plaintiff to post security in an appropriate amount.

## V. Conclusion

Based on the foregoing, the United States respectfully requests that this Court deny Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary

Injunction (Doc. 2).

RESPECTFULLY SUBMITTED: April 16, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Denise Ann Faulk*
DENISE ANN FAULK
Assistant U.S. Attorney
*Attorneys for United States*

/ Resp ER MF TRO