**GREEN EVANS-SCHROEDER, PLLC**
Matthew H. Green (AZ Bar No. 020827)
Jesse Evans-Schroeder (AZ Bar No. 027434)
130 West Cushing Street
Tel.: (520) 639-7288
Fax: (520) 882-8843
Email: matt@arizonaimmigration.net

*Attorneys for Plaintiff*
Student Doe #1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TUCSON DIVISION

| | |
|---|---|
| Arizona Student DOE #1, | No. CV-25-00174-TUC-JGZ |
| Plaintiff, | **SUPPLEMENT TO CONSOLIDATED REPLY TO DEFENDANTS' RESPONSES IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MOTION TO PROCEED UNDER PSEUDONYM** |
| v. | |
| Donald J. TRUMP, in his official capacity, President of the United States of America; | |
| John CANTU, in his official capacity as ICE Enforcement and Removal Operations Phoenix Field Office Director; | |
| Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; and | |
| Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security; | |
| Defendants. | |

Plaintiff respectfully files her Supplement to Consolidated Reply to Defendants' Responses in Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Motion to Proceed Under Pseudonym. This supplement is supported by the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff is one of over a thousand international students who have had their Student and Exchange Visitor Information Systems (SEVIS) records abruptly terminated in recent weeks.[1] Plaintiff brings this motion to ensure that she can proceed to prosecute this action—and other students can likewise feel safe bringing similar actions—free from retaliation, harassment, blacklisting, and other harm.

U.S. Immigration and Customs Enforcement's (ICE's) policy of unlawful terminations appears to be designed to coerce students into abandoning their studies or post-graduate training and "self-deport." As part of that policy, ICE has engaged in highly publicized arrests of students who presented no flight risk or danger, whisking them away from their campuses to faraway detention centers without warning based on their exercise of First Amendment rights. The terminations have also taken place against the backdrop of numerous threats issued to universities to cut off billions of dollars of

---

[1] *See International Student Visas Revoked*, INSIDE HIGHER ED, https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked (last accessed Apr. 14, 2025).

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

1

federal funding and retribution against others who have dared to criticize or go against the administration.

Prior to the hearing with this Court on April 17, 2025, the government had not elected to detain Plaintiff. However, the government's recent actions have understandably put Plaintiff on edge and rendered Plaintiff afraid of disclosing her identity. Plaintiff reasonably fears that Defendants will detain her in retaliation for filing this lawsuit. Given the high profile and political nature of the administration's visa revocations and actions against noncitizen students, Plaintiff also reasonably fears harassment and blacklisting by third parties were the public to learn of Plaintiff's identity.

This is an extraordinary moment in U.S. history, one that warrants a commensurate response from the courts. Nevertheless, the relief Plaintiff is seeking through her motions is relatively modest and well within the scope of measures that the Court has authority to take to protect litigants and manage proceedings. Specifically, Plaintiff requests:

1.  Leave to proceed with the pseudonym Arizona Student Doe #1 in this action,;

2.  A continuing temporary restraining order (TRO) that

    a.  Requires any Party filing materials with information identifying Plaintiff redact or file such materials under seal;

    b.  Prevents Defendants from using information disclosed to them about Plaintiff for any purpose outside of this action;

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

2

    c.   Prohibits Defendants from arresting, detaining, or transferring Plaintiff outside of the jurisdiction of this Court while the instant litigation is pending; and

    d.   Declares Defendants' actions in terminating Plaintiff's SEVIS record from having any legal effect that would prevent Plaintiff from continuing her existing employment authorization, accruing any unlawful presence in the United States as a result of the SEVIS termination, or participating in any post-graduate employment authorization on Optical Practical Training (OPT) that she is entitled to enjoy as an F-1 nonimmigrant student. 5 U.S.C. § 705; § 706(2)(A), (C)-(D).

These actions are necessary for Plaintiff to be able to swiftly move forward with the case and they appropriately balance the need for anonymity and the interests of Defendants and the public. Accordingly, Plaintiff respectfully requests that the Court enter the proposed amended order lodged concurrently with this Supplement to Plaintiff's Motions.

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiff incorporates by reference the facts and background information set forth in her Complaint for Declaratory and Injunctive Relief (Doc. 1), Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and the attached exhibits thereto (Docs. 2, 2-5), and Motion to Proceed Under Pseudonym (Doc. 3), filed with this

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

3

Court on April 14, 2025. Plaintiff also incorporates by reference the facts and background information set forth in her Consolidated Reply to Defendants' Responses in Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Motion to Proceed Under Pseudonym, filed on April 16, 2025. *See* Docs. 8, 8-1, 9, 10, 10-1, 10-2.

On April 17, 2025, this Court held a hearing on Plaintiff's motions to proceed under pseudonym, and for a TRO. At the conclusion of the hearing, the Court continued the motions hearing until April 23, 2025 at 2:00 p.m., and ordered that "Plaintiff's counsel shall provide the Government with the identifying information necessary for the Government to make investigation into the allegations in this case determining Plaintiff's specific circumstances.  This information shall not be disclosed outside the context of the investigation or to any individuals or parties not involved in conducting the investigation, and may be used only to the extent needed to conduct such investigation." Doc. 12. This Court further ordered "that, in order to preserve the status quo during the pendency of the Motions, the Government shall not arrest, detain, or transfer Plaintiff out of this jurisdiction, pending further order of this Court." *Id.*

The Court also allowed the parties to provide any additional information to the Court by close of business on today's date. As such, Plaintiff provides the following information and argument below, and also through the exhibits attached hereto.

## III.    LEGAL ANANLYSIS AND ARGUMENT

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

4

### A. This Court Should Grant Plaintiff's Motion to Proceed Under Pseudonym

#### 1. Legal Standard

Although Rule 10(a) of the Federal Rules of Civil Procedure generally requires that a complaint include the name of all parties, it is well-established that federal courts have discretion to permit parties to proceed under pseudonyms "when special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067 (9th Cir. 2000) (collecting cases). Parties to litigation may proceed using a pseudonym with leave of the court. *See*, *e.g.*, *U.S. v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) ("Where it is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment, courts have permitted the use of pseudonyms."); *Balance Studio, Inc. v. Cybernet Entm't*, LLC, 204 F. Supp. 3d 1098, 1100–01 (N.D. Cal. 2016); *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 294 n.1 (2000) (noting that the district court permitted plaintiffs "to litigate anonymously to protect them from intimidation or harassment").

In this Circuit, courts analyze a request to proceed under a pseudonym or anonymously by analyzing whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1068. Relevant factors include "(1) the severity of the threatened harm . . . (2) the reasonableness of the anonymous party's fears . . . and (3) the

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

5

anonymous party's vulnerability to such retaliation." *Id. Advanced Textile* also recognizes that where anonymity is warranted, a court may also issue protective orders to govern the terms of disclosure and use of information about a party's identity pursuant to its inherent powers to manage court proceedings and Federal Rule of Civil Procedure 26(c). 214 F.3d at 1069.

### 2. Anonymity and a Protective Order Are Necessary to Preserve Plaintiff's Right of Access to the Court

#### a. *The Current Climate*

One of the hallmarks of this administration—just three months into the second Trump presidency—has been a willingness to exact revenge on the government's foes and perceived foes.[2] Whether it is former government officials, law firms, educational institutions, or others, the administration has not hesitated to use its vast power to compel allegiance or make life difficult for those who are seen as disloyal.

With respect to noncitizen students, the hammer has come down particularly hard. For example, on March 5, 2025, the government informed a graduate student and Fulbright recipient at Columbia University who had participated in protests last year, Ranjani Srinivasan, that her student visa had been revoked.[3] They began searching for

---

[2] *See* Michael S. Schmidt, *In Trump's Second Term, Retribution Comes in Many Forms*, N.Y. TIMES (Apr. 7, 2025), https://www.nytimes.com/2025/04/07/us/politics/trump-biden-law-firms-revenge.html.

[3] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. TIMES (Mar. 15, 2025),

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

6

her, eventually raiding her apartment. Fearing for her safety, she left the United States.

Secretary of Homeland Security Kristi Noem then posted on X, "I'm glad to see one of

the Columbia University terrorist sympathizers use the CBP Home app to self deport."[4]

On March 21, 2025, Momodou Taal, a student at Cornell University who had filed a

lawsuit challenging the administration's crackdown, was asked to surrender to

immigration authorities.[5] He eventually self-deported. On March 25, 2025, six

plainclothes federal officers ambushed Rümeysa Öztürk, a graduate student at Tufts

University, outside her home, apparently for co-authoring an op-ed.[6] At the time, she was

not aware that her visa had been revoked. Additional arrests in recent weeks have taken

place in New York, Washington D.C., Alabama, Minnesota, and Arizona.[7] Secretary of

---

https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristi-noem-video.html.

[4] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), https://x.com/Sec_Noem/status/1900562928849326488.

[5] Benjamin Leynse and Avery Wang, *A Pro-Palestinian Activist Lost His Case, but the "Fight From Below" Continues*, THE NATION (Apr. 7, 2025), https://www.thenation.com/article/activism/momodou-taal-palestine-cornell-university-trump-lawsuit/.

[6] Dalia Faheid & Gloria Pazmino, *A PhD Student Was Snatched by Masked Officers in Broad Daylight*, CNN (Mar. 29, 2025), https://www.cnn.com/2025/03/29/us/rumeysa-ozturk-tufts-university-arrest-saturday/index.html.

[7] Eliza Shapiro, *Immigration Authorities Arrest Pro-Palestinian Activist at Columbia*, N.Y. TIMES (Mar. 9, 2025), https://www.nytimes.com/2025/03/09/nyregion/ice-arrests-palestinian-activist-columbia-protests.html (arrest of Mahmoud Khalil); Jaclyn Diaz, *What We Know About the Case of Detained Georgetown Professor Badar Khan Suri*, NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-s1-5336173/immigration-

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

7

State Marco Rubio called the international students "lunatics."[8] A number of the students have been quickly moved across state lines to detention facilities in Louisiana or Texas.[9]

The government's targeting of students has expanded far beyond just those who have been vocal about Palestine.[10] In the vast majority of cases, immigration officials have not provided reasons for the visa revocations and terminations.[11] The actions by ICE have been accompanied, or have sometimes been preceded, by harassment or doxxing of

georgetown-university-professor (arrest of postdoctoral fellow Badar Khan Suri); Eduardo Medina and Anemona Hartocollis, ICE Agents Detain University of Alabama Doctoral Student, N.Y. TIMES (Mar. 26, 2025), https://www.nytimes.com/2025/03/26/us/ice-detains-doctoral-student-university-alabama.html (arrest of doctoral student at U of Alabama); *University of Minnesota Student Who Was Detained by ICE Sues for Immediate Release*, ASSOC. PRESS (Apr. 2, 2025), https://www.cnn.com/2025/04/02/us/university-of-minnesota-graduate-student-detained-ice-lawsuit/index.html (arrest of Doğukan Günaydın); Helen Rummel, *International ASU Student Detained After Visa Revoked*, ARIZ. TIMES (Apr. 4, 2025), https://www.azcentral.com/story/news/local/arizona-education/2025/04/04/arizona-state-university-student-detained-after-visa-revocation/82793138007/ (arrest of student at ASU).

[8] Madeline Halpert, *Marco Rubio Says US Revoked At Least 300 Foreign Students' Visas*, BBC (Mar. 27, 2025), https://www.bbc.com/news/articles/c75720q9d7lo.

[9] Jaclyn Diaz & Adrian Florido, *Why Is Trump Sending Immigrant University Students to Louisiana and Texas?*, NPR (Apr. 8, 2025), https://www.npr.org/2025/04/08/nx-s1-5351645/ice-detention-louisiana-university-scholars.

[10] Kate Selig and Halina Bennet, *The Trump Administration Revoked 800 Student Visas. Here Is What We Know*, N.Y. TIMES (Apr. 11, 2025), https://www.nytimes.com/2025/03/27/us/students-trump-ice-detention.html.

[11] While minor criminal history or police contact is suspected, that still is not a basis for termination of a student's SEVIS record or status. (*See* Complaint, Dkt. 1, ¶¶ 15-20.)

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

8

students by right-wing groups.[12]

**b.** *Plaintiff Has a Right of Access to the Courts Which Would be Undermined by Retaliation and Harassment*

Plaintiff has an inalienable right to "petition the government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has recognized this right "as one of the most precious of the liberties safeguarded by the Bill of Rights[.]" *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002) (internal citation omitted). The Court has repeatedly held that the right of access to the courts can implicate "the protections of the Petition Clause." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).

Retaliation against lawful petitioning would undermine the integrity of the right and itself run afoul of the Petition Clause. *Borough of Duryea*, 564 U.S. at 387 (holding that retaliation by government employee can violate the Petition clause); *see also Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009) ("[W]hen a person petitions the government for redress, the First Amendment prohibits any sanction on that action . . . so long as the petition was in good faith."); *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995) (holding that the government cannot transfer a prisoner from one correctional institution to another in order to punish the prisoner for exercising his First

---

[12] Stephanie Saul, *A Mysterious Group Says Its Mission Is to Expose Antisemetic Students*, N.Y. TIMES (Apr. 1, 2025), https://www.nytimes.com/2025/04/01/us/israel-gaza-student-protests-canary-mission.html; Tesfaye Negussie and Nadine El-Bawab, *Doxxing Campaign Against Pro-Palestinian College Students Ramps Up*, ABC NEWS (Oct. 20, 2023), https://abcnews.go.com/International/doxxing-campaign-pro-palestinian-college-students-ramps/story?id=104141630.

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

9

Amendment right to pursue litigation). Here, protective measures are necessary to preserve the right of access to the courts. *Cf. Advanced Textile*, 214 F.3d at 1073 (recognizing that fear of employer reprisals "will frequently chill employees' willingness to challenge employers' violations of their rights").

### c. *Plaintiff's Reasonable Fear of Harassment and Other Harms by Third Parties Supports Anonymity*

As noted above, due to the controversial political nature of student visa revocations, Plaintiff reasonably fears possible harassment and blacklisting by third parties if they were to be identified as a student whose SEVIS was terminated and sued the government. Such threatened harm would be severe, and Plaintiff's fears are reasonable. This is enough to demonstrate a need for anonymity. *See Advanced Textile*, 214 F.3d at 1068. Moreover, "where the plaintiff attacks governmental activity," the case for proceeding anonymously is particularly strong. *See, e.g.*, *E.W. v. N.Y. Blood. Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). This is because, in such circumstances, the plaintiff "presumably represents a minority interest (and may be subject to stigmatization)[.]" *Id.*

In connection with permitting Plaintiff to proceed anonymously in the action, the Court has the power to require that any Party filing materials containing information about Plaintiff's identity redact or file such information under seal. Fed. R. Civ. P. 5.2(e). Such an order would be common sense here.

### d. *Plaintiff's Reasonable Fear of Retaliation by the Government Supports Entry of a Protective Order*

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

10

Plaintiff recognizes the need to provide the government with information about her identity to permit the government to litigate the case. However, due to the very real risk of retaliation by the government, Plaintiff is unable to do so without continued protection. Accordingly, Plaintiff asks that the Court enter a continuing order governing the use of any information Plaintiff discloses. *See Advanced Textile*, 214 F.3d at 1069 ("In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings . . . and to issue protective orders limiting disclosure of the party's name . . . to preserve the party's anonymity to the greatest extent possible . . . .").

Plaintiff's request that the Court enter a protective order limiting the sharing by Defendants' counsel of any information about Plaintiff's identity or related personal information and restricting its use for any purpose outside of this action is reasonable and routine. Courts have also imposed similar terms in protective orders governing information about plaintiffs' identity or litigation materials. *See, e.g.*, *ACLU of Nevada v. Masto*, No. 08-cv-00822-JCM-PAL, 2008 WL 3874263, at *6 (Aug. 18, 2008) (permitting Doe plaintiffs to proceed under pseudonym, requiring counsel for plaintiffs to disclose the identities of plaintiffs to defendants' counsel, and entering a temporary protective order precluding defendants from disclosing the identities or using the information for any purpose outside the litigation); *Enters. Int'l, Inc. v. Pasaban*, S.A., No. 3:11-CV-05919-RBL, 2012 WL 5269375, at *2 (W.D. Wash. Oct. 24, 2012) (granting protective order restricting disclosure and use of information); *Alvarez v. The*

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

11

*Hyatt Regency Long Beach*, No. CV 09-04791-GAF VBKX, 2010 WL 9505289, at *3 (C.D. Cal. Sept. 21, 2010) (granting motion to compel with conditions restricting disclosure and use of information); *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, No. CV092059CASAGRX, 2009 WL 10698442, at *4 (C.D. Cal. Dec. 10, 2009) (similar with respect to motion to compel deposition testimony).

### 3. Plaintiff's Requested Relief Will Not Prejudice Defendants and Is in the Public Interest

Granting Plaintiff's requested relief will not prejudice Defendants. First, under the terms of the Court's interim protective order, Plaintiff's counsel has already provided Defendants' counsel with information about Plaintiff's identity. Second, the case will ultimately have little to do with the details of Plaintiff's individual situation. The lawsuit challenges the legality of Defendants' new policy of SEVIS terminations based on visa revocations and/or minor criminal history or police contact with respect to a large (and growing) group of international students around the country. There are only very specific grounds on which ICE can terminate a SEVIS record. (Complaint, Doc. 1, ¶¶ 19-29.) All that the Court will need to determine is whether Plaintiff falls into the class of international students impacted by Defendants' new policy or whether, on the other hand, any of the specific authorized grounds to terminate apply. That depends on a discrete set of facts, few if any of which are likely to be disputed. Plaintiff does not challenge revocation of their visa in this action. (*Id.*, ¶ 9.)

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

12

Finally, given the circumstances here, anonymity and protection from retaliation *serves* rather than detracts from the public interest. While the public has an interest in access to court proceedings, the individual identity of Plaintiff is not necessary to facilitate the public's understanding of judicial decision-making or "public scrutiny of the important issues in this case." *Advanced Textile*, 214 F.3d 1072. Moreover, the "public . . . has an interest in seeing this case decided on the merits." *Id.* at 1073; *see also N.Y. Blood. Ctr.*, 213 F.R.D. at 111 (where plaintiff challenges a governmental policy or statute "there is arguably a public interest in a vindication of his rights"). Advancing that public interest includes meaningful protection from retaliation. *See Rivera v. NIBCO Corp.*, 364 F.3d 1057, 1064, 1066 (9th Cir. 2004) (granting protective order in recognition of the "harsh[] reality" that defendants had incentive to subject plaintiffs to enforcement action notwithstanding "promise[s] not to [retaliate]" and that unrestricted discovery would "unacceptably burden[] the public interest").

## B. This Court Should Grant Plaintiff's Motion for Temporary Restraining Order

This Court should follow the scores of other federal district courts that have rejected the very arguments advanced by the government in its response to Plaintiff's motion for a temporary restraining order ("TRO"). As set forth in the motion (Doc. 2), supplemental reply (Doc. 10), and below, Plaintiff has established her entitlement to a temporary restraining order by clearly demonstrating: (1) a likelihood of success on the merits; (2) she will likely suffer irreparable harm in the absence of preliminary relief; (3)

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

13

the balance of equities tips in her favor; and (4) injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### 1. Plaintiff Is Likely to Succeed on the Merits

As an initial matter, the Court should reject the government's implication that Plaintiff's motion seeks to alter the status quo and therefore should be subjected to a standard that is higher than in the ordinary case. (Resp. at 9-10.) A temporary restraining order would merely restore Plaintiff to the uncontested status she held prior to the pending controversy. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quotation and internal citation omitted). The last uncontested status existed before Defendants terminated Plaintiff's SEVIS record, placing Plaintiff at risk of detention and removal on that basis. *Id.* (finding that an interpretation of status quo as the moment before filing a lawsuit but after alleged misconduct began "would lead to absurd situations, in which plaintiffs could never bring suit once infringing conduct had begun.") The standard for granting the TRO to restore Plaintiff's SEVIS record is "a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Plaintiff has met this standard.

### a.  *Plaintiff Does Not Have an Alternative, Adequate Remedy that Limits the APA's Waiver of Sovereign Immunity*

The government correctly points out that under the APA, sovereign immunity for actions in federal district court is not waived if another statute provides an "adequate remedy." *See* 5 U.S.C. §§ 702, 704; *United Aeronautical Corp. v. United States Air*

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

14

*Force*, 80 F.4th 1017, 1022 (9th Cir. 2023). The government's reliance on the Privacy Act as that alternative avenue for relief, however, is clearly misplaced. By the government's own admission, the Privacy Act permits actions only by "'a citizen of the United States or aliens lawfully admitted for permanent residence.' 5 U.S.C. § 522a(a)(2). Plaintiff makes no claim, nor can she, that she is either a U.S. citizen or a lawful permanent resident." (Resp. at 12.) Rather, as alleged in the Complaint, Plaintiff is an international student who is authorized to study in the United States for academic purposes. (Doc. 1 at 2 ¶ 1; *see also* Doc. 2 at 1 (referring to Plaintiff as in lawful F-1 status)). Plainly, Plaintiff does not qualify for relief under the Privacy Act.

An alternative statutory scheme is not adequate "if the remedy offers only 'doubtful and limited relief.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988)). Here, the remedy proposed by the government is "not even doubtful, but nonexistent." *Student Doe v. Noem, et. al.*, 2025 WL 1134977 *5 (E.D. Cal. April 17, 2025) (granting Plaintiff's motion for a temporary restraining order in nearly identical circumstances), *attached hereto* as Exhibit A. Accordingly, Plaintiff does not have an alternative, adequate remedy in the Privacy Act (or any other) that limits the APA's waiver of sovereign immunity, and Plaintiff may bring this action under the APA. *See Id.*

**b.** ***Termination of Plaintiff's SEVIS Record Is a Final Agency Action Because It Is an Action by Which "Legal Consequences Will Flow" or "Rights or Obligations Have Been Determined"***

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

15

Contrary to the government's claim, Plaintiff indeed alleges that termination of the SEVIS record constitutes final agency action for purposes of APA review. (Resp. at 13; Doc. 1 at 7-8 ¶ 29.) The government's argument that termination of a SEVIS record carries "no legal consequences" and thus does not qualify, is easily refuted. (Resp. at 13); *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  It is important to note that the government has not argued, nor could it, that the order terminating Plaintiff's SEVIS record does not mark the consummation of the agency's decision-making process. It clearly does. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3rd Cir. 2019). That leaves the government with the untenable argument that such an action is completely benign and legally meaningless, a position that defies logic and is contrary to law.

The government relies wholly on one paragraph of Mr. Watson's Declaration in support of its position that "no legal consequences will flow" from the termination of Plaintiff's SEVIS record. (Resp. at 13.) That is because, according to Mr. Watson, terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. (Id; citing Doc. 8-1 ¶ 8.) However, this simply is not the case, as testimony and argument have borne out over the past week in other districts with similarly situated plaintiffs, in TRO hearings where judges have grappled with the same questions before this Court.

For example, in *Patel v. Lyons*, 1:25-cv-01096-ACR, the U.S. District Court for the District of Columbia, the Government was unable to answer the court's question as to

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

16

whether the student Plaintiff was lawfully in the United States, or maintained lawful F-1

status, after his SEVIS record had been terminated. *See* Exhibit C, Transcript, *Patel v.*

*Lyons*, 1:25-cv-01096-ACR, 04/16/2025, at pp. 9-10. Exasperated by the chaotic state of

confusion caused by Defendants' actions, the court remarked:

> Do you realize that this is Kafkaesque? I've got two experienced
> immigration lawyers on behalf of a client who is months away from
> graduation, who has done nothing wrong, who has been terminated from a
> system that you all keep telling me has no effect on his immigration status,
> although that clearly is BS. And now, his two very experienced lawyers
> can't even tell him whether or not he's here legally, because the Court can't
> tell him whether or not he's here legally, because the government's counsel
> can't tell him if he's here legally.

Exhibit C, p. 10.

Later in the hearing, pursuant to the court's order, Mr. Watson appeared

telephonically to testify. The judge posed the same question to Mr. Watson, "right now

as of this moment, is Mr. Patel legally in the United States?" *Id.*, p. 22. Although Mr.

Watson answered that "in terms of his status [SEVIS termination] doesn't terminate his

nonimmigrant status at this point," he went on to state that, "I can't say that he's legally

in the United States." *Id.*, pp. 22-23.[13] The court ultimately concluded that the plaintiff

---

[13] Mr. Watson then explained that, in his opinion, the Department of State would also
need to be consulted to answer the question of whether the student plaintiff was legally in
the United States after his SEVIS account had been terminated. *Id.*, p. 23. He also
volunteered that Immigration and Customs Enforcement (ICE) is "rescrubbing these
lists," and that the Department of State "is re-examining various cases in a quality control
measure as well." *Id.*, p. 26.

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

17

had met it's burden and issued a TRO. *See* Exhibit D, Order, *Patel v. Lyons*, 1:25-cv-01096-ACR, April 17, 2025.

On April 18, 2025, a similar hearing took place in *Nali v. Noem, et al.,* 1:25-cv-03969, in the U.S. District Court for the Northern District of Illinois.  In that case, the Government also filed Mr. Watson's template declaration. *See* Exhibit E, Transcript, *Nali v. Noem, et al.,* 1:25-cv-03969, 04/18/2025, pp. 28-29. The court also qualified Stephen Navarre, an experienced immigration attorney whose immigration practice focuses on employment-based nonimmigrant visas and international students, as an expert witness for the student plaintiff. *Id.*, pp. 22, 56.

Mr. Navarette testified at length about the nature and process involved with international students applying for, receiving, and maintaining nonimmigrant student status.  As to the government's contention that terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States," Mr. Navarette summed up his opinion as follows:

> It seems to me in reading the pleadings in this case and the affidavit that the government's position is that termination in SEVIS is just nothing -- it doesn't really hurt him at all -- and which I guess raises the question as to why it was even done.
>
> But that aside, I think it's important to understand how technology has become so integral into -- into what we do.
>
> And I guess the best analogy I can give you is that, Judge, if you had a car 40 years ago, you could push-start that car to start it if you had to. Cars today -- think of the government coming and disconnecting your electronics remotely to your car and then telling you, "We didn't steal your car."

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

18

> The fact that the government didn't steal your car is irrelevant. This is what the government is saying when they're saying, "Well, he's got valid status. He's just terminated in SEVIS."
>
> You cannot run your car without the electronics. You cannot participate in this F-1 student program fully without an active SEVIS record.

*Id.*, pp. 31-32. As in *Patel*, *supra*, the court ultimately concluded that the plaintiff had met its burden and issued a TRO. *See* Exhibit F, Order, *Nali v. Noem, et al.,* 1:25-cv-03969, 04/18/2025.  As the information presented above clearly demonstrates, the termination of one's SEVIS record clearly affects the student immigrant's "rights or obligations." *Bennett*, 520 U.S. at 178.

Plaintiff has also established that as a practical matter, the termination of SEVIS records of other, similarly situated students, has been the factual basis on which their removal proceedings or detention began. (Doc. 10-1.) The consular email notification Plaintiff received indicated that her F-1 visa had been revoked and encouraged her to "depart the United States," to avoid "fines, detention, and/or deportation." (Doc. 10-2 at ¶ 8.)

The Court need only to look at DHS's public guidance, which states that a person whose SEVIS record is terminated faces numerous consequences, including: (1) loss of employment authorization;[14] (2) prohibited re-entry into the United States on the

---

[14]  Plaintiff indeed discontinued her on-campus employment due to reasonable fear of imminent arrest and further unlawful enforcement action by ICE. (Doc. 1 at 9 ¶ 40.) The Court should reject the government's effort to distance itself from its role in causing Plaintiff's response, given widespread accounts of similarly-situation foreign university students, including those in Arizona. (Doc. 1 at footnotes 1-5; Doc. 2 at 14-15.) This is

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

19

terminated SEVIS record; (3) investigation by ICE to confirm the student's departure; and (4) the termination of any associated F-2 or M-2 dependent records. *See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited April 20, 2025). These alone satisfy *Bennett*'s "rights or obligations" test for agency finality. *See Doe v. Noem*, __ F. Supp. 3d __, 2025 WL 1141279 at *7 (W.D. Wash. Apr. 17, 2025) (granting Plaintiff's motion for a temporary restraining order in nearly identical circumstances), *attached hereto* as Exhibit B; *see also Student Doe,* 2025 WL 1134977 at *5, *supra*, Exh. A.

The revocation of Plaintiff's SEVIS record is a unilateral determination with immediate consequences over which Plaintiff has no ability to seek administrative review. Under *Bennett*, when there are no remaining steps that an immigrant can take to have an action reviewed within the agency, the action is final and subject to judicial review. *Bennett*, 520 U.S. at 200. This was the express holding of the Third Circuit, which found that "since neither immigration judges nor the BIA have the authority to review SEVIS termination or a USCIS denial of reinstatement, there is no proceeding in which a student can contest the agency action at issue here. *Jie Fang,* 935 F.3d at 185. This Court, consistent with the Third Circuit and the numerous district courts that have considered the same question, should conclude that the termination of Plaintiff's SEVIS record constitutes a final agency action that is reviewable under the APA.

---

also why Plaintiff should be permitted to proceed under a pseudonym, as set forth above. *See also* Doc. 2 at 2-2; Doc. 10 at 3-6.

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

20

**2.  Plaintiff Is Likely to Suffer Immediate Irreparable Harm**

The government's efforts to downplay the consequences of their actions against Plaintiff (and similarly situated foreign students) is astounding. First, the suggestion by the U.S. Attorney's Office that Plaintiff can avoid harm by "depart[ing] the United States on her own" is a callous jab, and a disappointing response to a very serious injury that its client has inflicted upon Plaintiff, and hundreds of other similarly situated international students. (Resp. at 15.) Second, the harm Plaintiff will suffer is not merely a monetary injury "related to her loss of future employment[;]" and third, the harm she will suffer is not speculative. (Resp. at 14-15.) The email sent to Plaintiff warned:

> Remaining in the United States without lawful status can result in fines, detention, and/or deportation. It may also make you ineligible for a U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

(Doc. 10-2 at 3 ¶ 8.)

There is no lack of clarity. Official communications by a government agency should be accepted as meaning what they say, especially when the government has acted consistently with those words in their actions against other foreign students – which also began with the termination of a SEVIS record. The threat of detention and deportation, including to a third country, has been deemed sufficient to satisfy the irreparable harm factor for issuing a TRO. *See Doe, supra*, 2025 WL 1141279 at *8; *Student Doe,* 2025 WL 1134977 at *8. But there is more.

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

21

In *Student Doe*, the District Court for the Eastern District of California also found that loss of or delay in obtaining employment authorization is an irreparable harm, citing *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 968 (D. Md. 2020), *order dissolved sub nom. Casa de Maryland, Inc. v. Mayorkas*, No. 8:20-CV-2118-PX, 2023 WL 3547497 (D. Md. May 18, 2023) (a delay in an asylum seeker obtaining work authorization is an irreparable harm because "every additional day these individuals wait will visit[ ] on them crippling dependence on the charity and good will of others"); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434 (E.D.N.Y. 2018), *vacated and remanded sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020) (finding that if the DACA program were terminated, resulting loss of work authorization for DACA recipients would be an irreparable harm); *Karakozova v. Univ. of Pittsburgh*, 2009 WL 1652469, at *4 (W.D. Pa. June 11, 2009) (holding that plaintiff, a research assistant who alleged her position was terminated on a discriminatory basis, could show irreparable harm from loss of position because she could lose her H-1B visa and have to leave the country voluntarily or by removal, with no certainty of alternative relief). *Student Doe*, 2025 WL 1134977 at *7.

Similarly, the *Doe* court cited cases holding that interruption of a student's educational program or progress can be an irreparable harm: *Tully v. Orr*, 608 F.Supp. 2d 1222, 1225-26 (EDNY 1985) (disenrolling a cadet from the United States Air Force Academy "just prior to his examinations and graduation" would be an irreparable harm where the cadet would face the prospect of having to repeat courses, "delay[ ] in both his

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

22

graduation and commissioning," and a "deleterious effect" on his future in the force); *Maria v. Loyola Univ. of Chicago Stritch Sch. of Med.*, 2025 WL 96482, at *8 (N.D. Ill. Jan. 14, 2025) (accepting that loss of opportunity to participate in psychiatry residency is an irreparable harm, though denying injunction on other grounds); *Lujan v. United States Dep't of Educ.*, 664 F. Supp. 3d 701, 721 (W.D. Tex. 2023) (finding that erroneous loss of even one point on Fulbright scholarship application grading would be an irreparable harm, due to loss of opportunity to obtain scholarship). *Student Doe*, 2025 WL 1134977 at *8.

These deleterious effects are present here. If the government achieves its objective of coercing Plaintiff to self-deport, she will be unable to complete her degree program. That, in turn, will cause economic and reputation loss wherever she may ultimately reside. *Id*. (citation omitted). Further, the government may consider Plaintiff to be accruing unlawful presence in the United States because of the SEVIS revocation, which would similarly result in irreparable harm. *Id.* (citations omitted). For these, and many other reasons[15], Plaintiff will face irreparable harm absent the granting of injunctive relief.

---

[15] The potential legal consequences and injuries that flow from SEVIS termination are myriad, which are more fully explained and illustrated by two exhibits which were filed today in *BK, et al v. Noem, et al.*, 1:25-cv-00419-JMB-PJG (W.D. Mich.). *See* Exhibit G, Declaration of Brian Childs, Senior Director of the International Student & Scholar Services Office of Western Michigan University; *see also* Exhibit H, Copy of Notice of Intent to Deny, U.S. Citizenship and Immigration Services, April 18, 2025 (denying public school district's H1-B visa petition, construing SEVIS record termination to invalidate F-1 nonimmigrant status and disqualifying international F-1 student beneficiary from approval).

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

23

### 3. The balance of equities tips in Plaintiff's favor and is in the public interest

"When the government is a party, the balance of equities and the public interest factors merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the government asserts that the balance of equities and public interest lie in judicial deference to the other branches in which "control over immigration" is vested. (Resp. at 16.) While this is a generally true statement, it doesn't exclude the judiciary from having any role in agency decisions affecting immigration. As recognized in *Student Doe*, "[t]he APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Student Doe*, 2025 WL 1134977 at *4 (citing *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (internal quotation marks and citation omitted)). The APA "requires agencies to engage in reasoned decision-making, and directs that agency actions be set aside if they are arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law *Id.* (citing *Regents*, 591 U.S. at 16 (internal citations and quotation marks omitted)); *see also* 5 U.S.C. § 706(2)(A). In this case, the termination of Plaintiff's SEVIS record falls on the wrong side of "reasoned" decision-making.

The official reason for the termination of Plaintiff's SEVIS record was: "Otherwise failing to maintain status – Individual identified in criminal records check and/or has had their visa revoked." (Doc. 1 at 8 ¶ 34.) The Complaint explains, and Defendants do not dispute, what it means to "maintain status." (Doc. 1 at 6-7 ¶¶ 21-28.)

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

24

None of the disqualifying events apply here. Plaintiff has not been convicted of a crime of violence for which a sentence of more than one year imprisonment may be imposed. *See* 8 C.F.R. § 214.1(g). Accordingly, no ground for failure to maintain status is at issue. *See* 8 C.F.R. §§ 214.1(e)-(g). The government's action against Plaintiff's SEVIS record is inconsistent with its own regulations, which renders the decision invalid. *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *Wallace v. Christensen*, 802 F.2d 1539, 1552 n.8 (9th Cir. 1986) (an agency is "bound by its own regulations so long as they remain in force.")

It is also arbitrary and capricious because "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As the Ninth Circuit explained, the "critical factor in *Motor Vehicle* was that the agency 'submitted no reasons at all' for its decision." *McFarland v. Kempthorne*, 545 F.3d 1106, 1113 (9th Cir. 2008) (citing *Motor Vehicle*, 463 U.S. at 50). The government in this case has provided no explanation for its action against Plaintiff – aside from the stated reason that provides no particularity and is invalid as a matter of law. Pursuant to Ninth Circuit authority, the government has failed to meet "the general administrative-law requirement that an agency 'articulate a satisfactory

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

25

explanation for its action.'" *Hernandez v. Garland*, 52 F.4th 757, 768 (9th Cir. 2022) (quoting *State Farm*, 463 U.S. at 43).

The balance of equities and public interest weigh "sharply" in favor of ensuring the government conducts itself fairly and according to its stated regulations and policies. *Doe, supra*, 2025 WL 1141279 at *9 (citations omitted). As in *Doe*, this Court should conclude that the present set of circumstances is such that the government and its decision-making process will be best served by judicial review of a decision "that appears both unlawful and likely to cause Plaintiff irreparable harm." *Id.*

### 4.  The Court should not require a bond

The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation and citation omitted). Here, defendants will face no cost from Plaintiff continuing her studies as she did before her SEVIS record was terminated, nor will defendants face a cost from restoring her SEVIS record. Plaintiff's only criminal history is for a misdemeanor charge that was quickly dismissed. She poses little if any risk to the public. Accordingly, the Court should exercise its discretion to waive the imposition of a bond. *See* Fed. R. Civ. P. 65(c).

### IV.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motions, and issue an order providing the following:

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

1. Leave for Plaintiff to proceed with the pseudonym Arizona Student Doe #1 in this action,;

2. A continuing temporary restraining order (TRO)[16] that:

---

[16] Many other jurisdictions have issued TROs in the past week on the same or substantially similar facts. *See, e.g.*, *Nejugam v. Lyons*, No. 25-cv-00537 (N.D. Ala. Apr. 17, 2025) (extending a previously granted TRO, enjoining Mr. Lyons and his officers, agents, servants, employees, and attorneys, from effectuating ICE's termination of Plaintiff's SEVIS record and F-1 status); *Mashatti v. Lyons*, No. 25-cv-1100 (D.D.C. Apr. 17, 2025) (granting TRO where plaintiff showed irreparable harm due to loss of work authorization, reputational harm due to false accusation of having a criminal record, and accrual of unlawful presence); *Patel v. Bondi*, No. 25-cv-00101 (W.D. Penn. Apr. 17, 2025) (TRO granted where SEVIS terminated without explanation and without apparent legal basis under 8 C.F.R. § 214.2(f) or 214.1(d)); *Oruganti v. Noem*, No. 25-cv-00409 (E.D. Ohio Apr. 18, 2025) (granting TRO where SEVIS termination reportedly based on a misdemeanor defective equipment charge); *Chen v. Noem*, No. 25-cv-03292 (N.D. Cal. Apr. 18, 2025) (enjoining defendants from arresting, incarcerating, or transferring plaintiffs, as well as from imposing any legal effect that otherwise may be caused by the termination of plaintiff's SEVIS records); *Isserdasani v. Noem*, No. 25-cv-283-wmc, 2025 WL 1118626 (W.D. Wis. Apr. 15, 2025) (granting TRO where SEVIS termination based on non-prosecuted arrest was found likely arbitrary and in violation of APA); *Doe v. Noem*, No. 25-cv-03140-JSW (N.D. Cal. Apr. 17, 2025) (granting TRO enjoining ICE from enforcement action arising from SEVIS termination for misdemeanor conviction not meeting 8 C.F.R. § 214.1(g) criteria); *Arizona Student Doe #2 v. Trump*, No. CV-25-00175-TUC-AMM (D. Ariz. Apr. 15, 2025) (granting ex parte TRO enjoining arrest, removal, and enforcement based on SEVIS revocation undertaken without notice or hearing); *Roe v. Noem*, No. CV 25–40–BU–DLC, 2025 WL 1114694 (D. Mont. Apr. 15, 2025) (finding likelihood of success on APA and Due Process claims where SEVIS terminations lacked valid regulatory basis); *Liu v. Noem*, No. 25-cv-133-SE (D.N.H. Apr. 10, 2025) (TRO granted to prevent loss of status and graduation due to unexplained SEVIS termination); *Doe v. DHS*, No. 25-cv-2149 (N.D. Ill. Apr. 15, 2025) (TRO granted where SEVIS termination followed mistaken arrest for trespassing, with no charges filed); *J. Smith v. Noem*, No. 25-cv-1702 at 6–7 (C.D. Cal. Apr. 14, 2025) (TRO issued to enjoin ICE from detaining student whose SEVIS record was terminated following a minor misdemeanor not meeting statutory removal criteria); *Yousefi v. Noem*, No. 25-cv-0625 (S.D. Tex. Apr. 13, 2025) (court granted TRO where SEVIS record was terminated without agency explanation, jeopardizing student's graduation and STEM OPT eligibility); *Jin v. Noem*, No. 25-CV-1391 (D. Minn. April 17, 2025) (court granted

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

27

a. Requires any Party filing materials with information identifying Plaintiff redact or file such materials under seal;

b. Prevents Defendants from using information disclosed to them about Plaintiff for any purpose outside of this action;

c. Prohibits Defendants from arresting, detaining, or transferring Plaintiff outside of the jurisdiction of this Court while the instant litigation is pending; and

d. Declares Defendants' actions in terminating Plaintiff's SEVIS record from having any legal effect that would prevent Plaintiff from continuing her existing employment authorization, accruing any unlawful presence in the United States as a result of the SEVIS termination, or participating in any post-graduate employment authorization on Optical Practical Training (OPT) that she is entitled to enjoy as an F-1 nonimmigrant student. 5 U.S.C. § 705; § 706(2)(A), (C)-(D).

---

TRO enjoining ICE from enforcement action arising from SEVIS termination due to minor traffic violations.); *Doe v. Noem*, No. 25-cv-01103 (E.D. Cal. Apr. 17, 2025) (TRO granted where plaintiff was detained twice in 2024 but no charges were ever filed).

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

Dated: April 21, 2025                    Respectfully Submitted


                                         /s/Matthew Green
                                         Matthew Green
                                         Jesse Evans-Schroeder
                                         Attorneys for Plaintiff

Supplement to Consolidated Reply to Defendants'
Responses Opposing Motions for TRO/PI and
to Proceed Under Pseudonym

29