**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Student DOE #1,<br><br>Plaintiff,<br><br>v.<br><br>Donald J Trump, et al.,<br><br>Defendants. | No. CV-25-00174-TUC-JGZ<br><br>**ORDER** |

Pending before the Court are Plaintiff Arizona Student Doe #1's Emergency Motion for Temporary Restraining Order and Motion to Proceed Under Pseudonym. (Docs. 2, 3.) The Motions were briefed, (Docs. 8, 9, 10), and the Court held a hearing on April 17, 2025. The Court continued the hearing until April 23, 2025 to allow the Government to investigate Plaintiff's specific circumstances. (Doc. 12.) The Government filed Notices informing the Court of the results of their investigation and an updated witness declaration, (Docs. 15, 17, 19), and Plaintiff filed supplemental briefing, (Docs. 16, 20). The Court heard additional argument on April 23, 2025. For the following reasons, the Court will grant Plaintiff's Motion for Temporary Restraining Order and Motion to Proceed Under Pseudonym.

**I.     Background**

    **A. The F-1 Student Visa Program and SEVIS**

Under the Immigration and Nationality Act ("INA"), foreign students may enter the United States to pursue a full course of study at an approved educational institution. 8

U.S.C. § 1101(a)(15)(F)(i). Students admitted under this provision are classified as F-1 nonimmigrants. 8 C.F.R. § 214.1(a)(2). To be eligible for admission, the student must present a Form I-20, issued by a school certified by the Student and Exchange Visitor Program ("SEVP") for attendance by F-1 foreign students, and provide documentary evidence of financial support. 8 C.F.R. § 214.2(f)(1)(i). If admitted, the State Department issues a visa ("F-1 visa") that allows a qualified academic student to enter the country pursuant to their status under 8 U.S.C. § 1101(a)(15)(F)(i) ("F-1 status"). *See* 22 C.F.R. § 41.61(a)(1), (b)(1).

Immigration and Customs Enforcement ("ICE"), within the U.S. Department of Homeland Security ("DHS"), administers the F-1 visa system through the SEVP. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175 (3d Cir. 2019). SEVP manages and tracks nonimmigrant students through the Student and Exchange Visitor Information System ("SEVIS"). (Doc. 19 ¶ 3.) SEVIS is a web-based system that maintains information on SEVP-certified schools and nonimmigrant students attending those schools. (Doc. 8 at 8.) Schools must update SEVIS when a student's information changes, including when a student fails to maintain F-1 status. 8 C.F.R. § 214.3(g)(2)

F-1 students are admitted for the "Duration of status," or "the time during which an F-1 student is pursuing a full course of study . . . or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i). An F-1 student maintains their F-1 status if they are making normal progress toward completing a course of study, regardless of whether their F-1 visa expires. *Id.*; (*see* Doc. 8 at 7). A student who fails to maintain a full course of study without the approval of the Designated School Official ("DSO") or otherwise fails to maintain status must depart the United States immediately or seek reinstatement.[1] *Jie Fang*, 935 F.3d at 175–76 (citing 8 C.F.R. § 214.2(f)(5)(iv)).

A student can lose their F-1 status by either: (1) failing to meet the regulatory requirements for maintaining status; or (2) termination of status by DHS. *Doe v. Noem*,

---

[1] A student may seek reinstatement pursuant to the process set out in 8 C.F.R. § 214.2(f)(16), but the decision to reinstate is at the discretion of U.S. Citizenship and Immigration Services ("USCIS"), and the student may not appeal the decision. *Jie Fang*, 935 F.3d at 176 (citing 8 C.F.R. § 214.2(f)(16)(ii)).

No. 25-CV-00633, 2025 WL 1141279, at *2 (W.D. Wash. Apr. 17, 2025) (citing 8 C.F.R. §§ 214.1(d), 214.2(f)(5)(iv)). A student fails to maintain F-1 status if they engage in unauthorized employment, willfully fail to provide full and truthful information to DHS, or are convicted for a crime of violence for which a sentence of more than one year imprisonment may be imposed. 8 C.F.R. § 214.l(e)–(g). DHS may terminate a student's F-1 status in three ways: (1) revocation of a waiver authorized under section 212(d)(3) or 212(d)(4) of the INA; (2) introduction of a private bill to confer permanent resident status on the student; or (3) notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons. *Id.* § 214.1(d). "DHS's ability to terminate an F-1 student's status is limited to the three ways enumerated in § 214.1(d)." *Doe v. Noem*, 2025 WL 1141279, at *2 (citing *Jie Fang*, 935 F.3d at 185 n.100).

### B. Plaintiff Doe

Plaintiff Doe, a citizen of India, is an international graduate student residing in Pima County, Arizona, who is scheduled to earn her degree and graduate in May 2025. (Doc. 1 ¶ 14; Doc. 18-1 ¶ 13.) Plaintiff was lawfully admitted to the United States as an F-1 nonimmigrant visa holder in December 2021. (Doc. 17 at 1; Doc. 18-1 ¶ 4.) Plaintiff is married to a U.S. citizen and has a two-year-old daughter, who is also a U.S. citizen. (Doc. 18-1 ¶ 8.)

On April 3, 2025, Plaintiff received notice from her educational institution that her SEVIS record had been terminated. (Doc. 1 ¶ 33.) The stated reason was "Otherwise failing to maintain status – Individual identified in criminal records check and/or has had their visa revoked." (*Id.* ¶ 34.) According to the Government, ICE identified Plaintiff as having been arrested by the Tucson Police Department for "Assault-Touched to Injure" on October 3, 2023. (Docs. 15, 17.) Based on this information, the Department of State prudentially revoked Plaintiff's visa on March 31, 2025, and SEVP terminated Plaintiff's SEVIS record on April 2, 2025. (Docs. 15, 17.) Plaintiff maintains her criminal charge was dismissed on November 7, 2023, and the Government acknowledges that "records indicate that the charge was dismissed by the court." (Doc. 18-1 ¶ 9; Doc. 17 at 2.) Plaintiff has complied

with all requirements of her F-1 visa and status, including maintaining authorized on-campus employment, and the Government cites no reason other than the dismissed misdemeanor criminal charge as a basis for revoking Plaintiff's visa and terminating her SEVIS record. (Doc. 1 ¶¶ 32, 38–39; *see* Docs. 15, 17.)

Plaintiff does not feel safe to return to work because she is unsure what effect the SEVIS record termination has on her ability to legally work and fears she may be subject to arrest, detention, incarceration, or deportation if she returns to work. (Doc. 1 ¶ 40.) Plaintiff fears the loss of post-graduate employment opportunities through Optional Practice Training ("OPT").[2] (Doc. 18-1 ¶¶ 13–15.) Plaintiff has been experiencing high levels of stress and anxiety since receiving notice of her SEVIS record termination and fears the effect her incarceration or deportation would have on her family. (Doc. 1 ¶¶ 40–42.)

Plaintiff brought this action on April 14, 2025, asserting causes of action under the Administrative Procedure Act ("APA"), the Due Process Clause of the Fifth Amendment, and the *Accardi* Doctrine. (*See* Doc. 1.) In Counts I, III, and V, Plaintiff argues her SEVIS termination is not in accordance with law, arbitrary and capricious, and contrary to her constitutional right to due process, in violation of the APA. (*Id.* ¶¶ 45–48, 53–56, 58–61.) In Count II, Plaintiff argues her SEVIS record termination on improper grounds without prior notice or an opportunity to respond violated her Fifth Amendment right to due process. (*Id.* ¶¶ 49–52.) In Count IV, Plaintiff argues the Government's policy of targeting African, Arab, Middle Eastern, Muslim, and Asian students for removal based on their race and national origin violates the APA and the *Accardi* doctrine. (*Id.* ¶ 57 (citing *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).)

In the motions pending before the Court, Plaintiff seeks leave to proceed under the pseudonym "Arizona Student Doe #1" and a Temporary Restraining Order ("TRO") that:

    a. Requires any Party filing materials with information identifying Plaintiff redact or file such materials under seal;

---

[2] A F-1 student who has completed their course of study may apply to USCIS for authorization to remain in the United States and engage in temporary employment related to the student's area of study. 8 C.F.R. § 214.2(f)(10)–(12).

- 4 -

    b. Prevents Defendants from using information disclosed to them about Plaintiff for any purpose outside of this action;
    c. Prohibits Defendants from arresting, detaining, or transferring Plaintiff outside of the jurisdiction of this Court while the instant litigation is pending; and
    d. Declares Defendants' actions in terminating Plaintiff's SEVIS record from having any legal effect that would prevent Plaintiff from continuing her existing employment authorization, accruing any unlawful presence in the United States as a result of the SEVIS termination, or participating in any post-graduate employment authorization on Optical [sic] Practical Training (OPT) that she is entitled to enjoy as an F-1 nonimmigrant student. 5 U.S.C. § 705; § 706(2)(A), (C)-(D).

(Doc. 16 at 27–29.)

## II.  **Legal Standard**

A party seeking preliminary injunctive relief under Federal Rule of Civil Procedure 65 must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the standard for issuing a preliminary injunction is substantially identical to the standard for issuing a TRO). The balance of equities and public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Where a party "can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the [party]'s favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this Ninth Circuit "serious questions" test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

//

### III. Discussion

#### A. Motion to Proceed Under Pseudonym

Generally, a party proceeding anonymously "runs afoul of the public's common law right of access to judicial proceedings, . . . and Rule 10(a)'s command that the title of every complaint 'include the names of all the parties.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (quoting Fed. R. Civ. P. 10(a)). However, when special circumstances justify secrecy, federal courts may allow parties to proceed under a pseudonym. *Id.* (collecting cases). In the Ninth Circuit, the standard is whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. Where a pseudonym is used to shield a party from retaliation, the district court should evaluate three factors: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation. *Id.*

Here, Plaintiff fears retaliation by Defendants, harassment by the public, and blacklisting by third parties. (Doc. 3 at 4.) Plaintiff cites the current "environment of threats and fear of extreme and harsh treatment of immigrants and noncitizens [that] encourages private individuals to take action against those individuals in a manner they believe is desired by the government." (*Id.* at 6.) Plaintiff alleges that because the government describes the reason for terminating her SEVIS record as criminal activity, her reputation would be tarnished if such information is revealed to the public and third parties, prejudicing her future ability to be hired or accepted into a school. (*Id.* at 6–7.)

Plaintiff's need for anonymity outweighs any prejudice to Defendants and the public interest in knowing Plaintiff's identity. Plaintiff has already provided Defendants with identifying information to allow Defendants to investigate and defend this lawsuit, and thus, they will suffer no prejudice. Plaintiff's concerns of retaliation and reputational harm are reasonable and potentially severe. The Court will grant Plaintiff's Motion to Proceed Under Pseudonym.

//

**B. Temporary Restraining Order**

    1. <u>Likelihood of Success on the Merits</u>

Plaintiff's arguments in Counts I and V, that termination of her SEVIS record was arbitrary and capricious and not in accordance with law under the APA, are likely to succeed on the merits, or at least, raise serious questions going to the merits.[3]

    a. *The Privacy Act & Sovereign Immunity*

The Government argues it has not waived sovereign immunity under the APA because Plaintiff's claim sounds in the Privacy Act, which provides an alternative, adequate remedy to the APA. (Doc. 8 at 11 (citing 5 U.S.C. § 552a(g)(1)(C))); *see* 5 U.S.C. § 704 (final agency action is reviewable under the APA only if the plaintiff has no other adequate remedy in a court).

"An alternative remedy will not be adequate 'if the remedy offers only doubtful and limited relief.'" *Student Doe v. Noem*, No. 25-CV-01103, 2025 WL 1134977, at *4 (E.D. Cal. Apr. 17, 2025) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009)). Because the Privacy Act does not provide Plaintiff, a noncitizen, with any cause of action, it is, at least likely, that the Privacy Act does not provide her an adequate remedy. (*See* Doc. 8 at 12 (citing 5 U.S.C. § 552a(a)(2)) (the Privacy Act precludes review because Plaintiff is a foreign national). Additionally, other courts have found that, "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." *All. for Retired Americans v. Bessent*, No. CV-25-0313, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025)

    b. *Final Agency Action*

Agency action is subject to judicial review if it is either "made reviewable by statute" or "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.[4] To constitute "final" agency action, the action must: (1) mark the

---

[3] Because Plaintiff has established a likelihood of success on the merits of the APA claims in Counts I and V, the Court does not address Plaintiff's likelihood of success on Counts II, III, or IV.

[4] No statute authorizes judicial review of the termination of SEVIS records; thus, the

consummation of the agency's decisionmaking process, i.e., the action must not be of a merely tentative or interlocutory nature; and (2) must be one by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

The Government argues no legal consequences flow from the termination of Plaintiff's SEVIS record, because terminating a SEVIS record does not terminate an individual's nonimmigrant status, and therefore such termination is not final agency action subject to review. (Doc. 8 at 13; Doc. 8-1 ¶¶ 8–9.) At this stage, the Government's argument is contrary to the evidence before the Court.

First, the DHS website states:

When an F-1/M-1 SEVIS record is terminated, the following happens:
- Student loses all on- and/or off-campus employment authorization.
- Student cannot re-enter the United States on the terminated SEVIS record.
- Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student.
- Any associated F-2 or M-2 dependent records are terminated.

*SEVIS Help Hub, Terminate a Student*, DHS, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last updated Nov. 7, 2024). The website states that if the termination is for any violation of status, the student must apply for reinstatement or immediately leave the United States. *Id.* Clearly, losing employment authorization[5] and being required to immediately apply for reinstatement or leave the country are legal consequences.

Second, Plaintiff and other similarly situated F-1 students have received email

---

termination of Plaintiff's SEVIS record must be final agency action for which there is no other adequate remedy. *Doe v. Noem*, 2025 WL 1141279, at *3.

[5] According to Plaintiff's evidence, termination of a SEVIS record can affect employment in several ways. A school cannot authorize student work if the student's SEVIS record has been terminated. *See* Doc. 16-2, Ex. C, Hearing Transcript at 27:17–29:4, *Nali v. Noem*, No. 25-CV-3969 (N.D. Ill. Apr. 18, 2025) (explaining that work authorization programs require schools to generate updated I-20 forms, which can only be done in the SEVIS system, i.e., only if the student has an active SEVIS record). In addition, to be eligible to apply to USCIS for post-completion OPT, a student must "Obtain the DSO's recommendation and have the DSO's recommendation entered into the student's SEVIS record and annotated on their form I-20." USCIS Policy Manual, https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-5 (last visited Apr. 23, 2025); 8 C.F.R. § 214.2(f)(11)(ii)(B). A DSO may only grant a program extension by updating SEVIS and issuing new Form I-20. 8 C.F.R. § 214.2(f)(6)(iv).

- 8 -

messages informing them that their F-1 visas have been revoked and stating:

> Remaining in the United States without lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

(Doc. 10-2 ¶ 8; Doc. 16 at 20.) If neither a prudential visa revocation nor a SEVIS record termination causes a F-1 student to lose their F-1 status, as the Government suggests, it is a mystery why the Government would inform Plaintiff of the consequences of remaining in the United States *without lawful immigration status*. (*See* Doc. 8 at 9.)

Third, SEVP's stated reason for terminating Plaintiff's SEVIS record is: "Otherwise Failing to Maintain Status – Individual identified in criminal records check and/or has had their visa revoked." (Doc. 2 at 11.) This reason is given only if "[t]he student has not maintained status." *SEVIS Help Hub, Termination Reasons*, DHS, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last updated Apr. 9, 2025). Again, the Government's position is, at best, inconsistent. On one hand, Plaintiff's SEVIS record was terminated because she failed to maintain status. Yet, by the Government's admission, the *only* reason for terminating Plaintiff's SEVIS record is her criminal history. (Doc. 19 ¶¶ 7–8.) But Plaintiff's one criminal charge was dismissed, which means it could not be a valid basis for failing to maintain F-1 status. *See* 8 C.F.R. § 214.1(g).

Essentially, on one hand, the Government says Plaintiff is wrong to conflate the termination of her SEVIS record with the termination of her F-1 status; on the other hand, the Government itself appears to conflate the two actions and treat Plaintiff as if she has in fact failed to maintain status. As other courts facing this issue in recent days have found, it is likely that the termination of a student's SEVIS record "effectively terminat[es] [that student]'s F-1 status." *Student Doe v. Noem*, 2025 WL 1134977, at *5 & n.1. The Government does not appear to dispute that terminating a student's F-1 status is a final agency action subject to review. *See Jie Fang*, 935 F.3d at 185; (Doc. 8 at 13 (arguing that because termination of a SEVIS record does not terminate a student's nonimmigrant status,

Plaintiff fails to allege a challenge to final agency action).

Additionally, while ICE claims the inherent authority under 8 U.S.C § 1372 "to terminate SEVIS records, as needed, to carry out the purposes of the program," there does not appear to be any externally imposed limiting principle to this authority. (Doc. 19 ¶ 4.) Nor has the Government cited any authority that corroborates the statement of Mr. Watson, the Government's declarant, as the statute cited does not explicitly address the termination of SEVIS records. *See* 8 U.S.C. § 1372 (the Government shall "develop and conduct a program" to collect information on F-1 students and "establish an electronic means to monitor and verify" such information). If termination of a SEVIS record is the practical and functional equivalent of termination of a student's F-1 nonimmigrant status, as seems likely at this stage of litigation, then ICE does not have inherent authority to terminate SEVIS records for any reason they choose, as federal regulations limit the means by which ICE can terminate a student's F-1 status. *See* 8 C.F.R. § 214.1(d).

In sum, it is likely that the termination of a SEVIS record is a final agency action because it either: (1) effectively terminates that student's F-1 status; or (2) itself implicates rights and obligations and has legal consequences, such as preventing the student and their DSO from complying with reporting requirements or maintaining eligibility for employment authorization. (*See* Doc. 20-1 at 3–5); *see also, e.g.*, *Student Doe v. Noem*, 2025 WL 1134977, at *5; *Doe v. Noem*, 2025 WL 1141279, at *3; *Hinge v. Lyons*, No. CV 25-1097, 2025 WL 1134966 (D.D.C. Apr. 15, 2025); *Patel v. Bondi*, No. 25-CV-00101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025).

c. *Application of APA*

Under the APA, reviewing courts shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency must follow its own policies and regulations. *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003) (citing *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003)). "Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures." *Church of*

*Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).

In terminating Plaintiff's SEVIS record, ICE appears to have failed to follow its own policies and the regulations governing F-1 nonimmigrant students. As discussed above, ICE appears to have effectively terminated Plaintiff's F-1 status, but it did not do so in accordance with 8 C.F.R. § 214.1(d); Plaintiff did not fail to maintain status under 8 C.F.R. § 214.1(e)–(g). Plaintiff has raised serious questions as to the merits of her claim that ICE's termination of her SEVIS record was not in accordance with law.

Agency action is arbitrary and capricious if the agency entirely fails to consider an important aspect of the problem or offers an explanation for its decision that runs counter to the evidence before the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must "articulate a satisfactory explanation for its action." *Hernandez v. Garland*, 52 F.4th 757, 768 (9th Cir. 2022) (quoting *State Farm*, 463 U.S. at 43).

Here, the reason given for Plaintiff's SEVIS record termination was "Otherwise Failing to Maintain Status – Individual identified in criminal records check and/or has had their visa revoked." (Doc. 2 at 11.) The reason given is unlikely to be satisfactory and runs counter to the evidence before the agency. The one criminal charge against Plaintiff was dismissed, and she has maintained her F-1 status in accordance with all other requirements. Therefore, her criminal record is an insufficient reason to terminate her SEVIS record, and the Government does not point to any evidence of an alternative basis for the termination.

At this stage, Plaintiff is likely to succeed on the merits of her APA claims in Counts I and V. At minimum, these claims raise serious questions going to the merits.

2. <u>Irreparable Harm</u>

Plaintiff asserts she faces several forms of irreparable harm as a result of her SEVIS record termination, including: (1) interruption of her master's program weeks before her scheduled graduation; (2) loss of benefits of F-1 status, including current and future employment authorization; (3) potential accrual of unlawful presence time; and (4) risk of

immediate enforcement action, including arrest, detention, transfer to another jurisdiction, and deportation. (Doc. 2 at 21–24; Doc. 16 at 22–24.) The Government maintains that Plaintiff's asserted harms are speculative because termination of her SEVIS record does not terminate her F-1 status. The Government states that Plaintiff has chosen to discontinue her on-campus employment, but no one has actually told her she cannot continue her employment or finish her degree.

Plaintiff has met her burden to show irreparable harm that is not merely speculative at this stage. As noted above, DHS's own website says a terminated SEVIS record results in loss of on- and off- campus employment authorization and potential investigation by ICE. *SEVIS Help Hub, Terminate a Student*, DHS, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last updated Nov. 7, 2024). DHS's website also states that if a termination is for a violation of status, the student must immediately apply for reinstatement or leave the United States. *Id.* Plaintiff's declarant, Ms. Shishegar, a DSO with 18 years of experience dealing with F-1 student programs, states that termination of a SEVIS record ends all benefits of F-1 status, including employment authorization, and that USCIS will not approve a student's OPT application if their SEVIS record has been terminated. (Doc. 20-1 ¶¶ 10–11.) Without an active SEVIS record, Plaintiff will be unable to meet regulatory reporting requirements. (*Id.* ¶ 30.) In an email, the Government warned Plaintiff of the consequences of remaining in the United States without lawful status, which include fines, detention, and deportation. (Doc. 16 at 22.)

Additionally, Plaintiff has submitted evidence of four international students in Minnesota who have been detained and placed in removal proceedings, after having their student visas revoked and SEVIS records terminated. (Doc. 10-1 at 2.) The Declarant's client was charged with removability under § 237(a)(1)(C)(i) of the INA, which states that a nonimmigrant is deportable if they have failed to maintain their nonimmigrant status. The Government could not assure the Court that no enforcement action against Plaintiff is forthcoming. All the Government could say is that Plaintiff has not been arrested or

detained yet. ICE has terminated hundreds or thousands of SEVIS records, and some of those students have been detained and placed in removal proceedings. The Government's actions, with respect to both Plaintiff and F-1 students nationwide, show that the threat of unlawful detention and deportation to Plaintiff is more than merely speculative.

### 3. Balance of Equities & Public Interest

The Court finds the balance of equities weighs in Plaintiff's favor and issuing temporary injunctive relief will serve the public interest. The Government argues these factors weigh against injunctive relief because the public has a strong interest in the enforcement of immigration laws, which are the sovereign prerogative of the political branches of government. (Doc. 8 at 16.) But the public has an interest in the government following its own regulations, and "Defendants have provided *no indication* that they complied with the relevant statutory scheme in 'enforcing immigration laws' in this case." *Doe v. Noem*, 2025 WL 1141279, at *9 (emphasis in original). Defendants have not alleged that temporary relief would cause them injury.

The Government also argues that Plaintiff must meet a higher standard than the ordinary case because the injunctive relief sought would change the status quo rather than merely preserve it. (Doc. 8 at 9.) However, "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Here, the controversy arose because of the termination of Plaintiff's SEVIS record, and the last uncontested status was prior to that action, i.e., when Plaintiff's SEVIS record was active and there was no dispute about whether she maintained lawful F-1 status. Therefore, a higher TRO standard is not warranted in this case.

**C. Bond**

Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction or TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully

enjoined or restrained." Fed. R. Civ. P. 65(c). A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).

Here, the Government faces no realistic likelihood of harm from Plaintiff's requested temporary injunctive relief, and the Court will not require Plaintiff to file a bond.

## IV.   Conclusion

For the reasons discussed above,

**IT IS ORDERED:**

1. Plaintiff's Motion to Proceed Under Pseudonym (Doc. 3) is **granted**. Any party filing materials with information identifying Plaintiff shall redact or file such materials under seal. Defendants must not use information disclosed to them about Plaintiff for any purpose outside of this action.

2. Plaintiff's Motion for Temporary Restraining Order (Doc. 2) is **granted**. A Temporary Restraining Order is entered under the following conditions:

   (a) Defendants are enjoined from arresting, detaining, or transferring Plaintiff outside the jurisdiction of this Court (the District of Arizona) while the instant litigation is pending; and

   (b) Defendants' actions in terminating Plaintiff's SEVIS records shall have no legal effect that would:

   (i) prevent Plaintiff from continuing her current course of studies and existing employment authorization,

   (ii) cause Plaintiff to accrue any unlawful presence in the United States, or

   (iii) cause Plaintiff to lose eligibility for, or prevent Plaintiff from participating in, any post-graduate employment authorization (Optional Practical Training) that she is entitled to as an F-1 nonimmigrant student in lawful status.

3. Because the Court has considered the materials provided in Plaintiff's supplemental briefs, Plaintiff's Motions to Supplement Plaintiff's Consolidated Reply to Defendants' Responses (Docs. 16, 20) are **granted**.

4. Once Plaintiff has effectuated service on Defendants, Defendants must serve a responsive pleading within 60 days. Fed. R. Civ. P. 12(a)(2).

5. Counsel for the parties shall meet and confer and, on or before **May 2, 2025**, submit a proposed briefing schedule regarding Plaintiff's Motion for Preliminary Injunction. After receiving the proposed briefing schedule, the Court will order a finalized briefing schedule and set a hearing on Plaintiff's Motion.

The parties' proposed briefing schedule shall include a deadline for submitting a joint pre-hearing statement. In the joint pre-hearing statement, the parties must set forth a summary of the issues relevant to the motion and the parties' positions; a statement of the Court's jurisdiction; a list of each party's proposed witnesses and the likelihood of their appearance; a list of each party's exhibits; and the estimated length of the hearing.

Additionally, prior to the hearing, counsel must provide a Notice to Court Reporter to facilitate the creation of an accurate record. The Notice shall contain the following information that may be used during the proceeding:

    a. Proper names, including those of witnesses.
    b. Acronyms.
    c. Geographic locations.
    d. Technical/medical terms, names, or jargon.
    e. Table of authorities, in alphabetical order, which includes all the authorities on which the parties will rely at the proceeding.

//
//
//
//
//

The Notice to Court Reporter need not be filed but shall be provided by email to Judge Zipps' Court Reporter, Linda Parks (Linda_Parks@azd.uscourts.gov), with a courtesy copy to Judge Zipps' Chambers (zipps_chambers@azd.uscourts.gov).

Dated this 24th day of April, 2025.

_____
Jennifer G. Zipps
Chief United States District Judge